# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| DEAN BOONE, individually, and on behalf of all others similarly situated,<br><br>PLAINTIFF,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>DEFENDANT. | Civil Action No. 2:17-cv-00378<br><br>THIRD AMENDED CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Dean Boone, by and through his attorneys, The Kim Law Firm, LLC, Profy Promisloff & Ciarlanto, P.C., and Ferrara Law Group, P.C. and on behalf of himself, and the Putative Classes set forth below, and in the public interest, hereby brings the following class action Complaint against Defendant T-Mobile USA, Inc., pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA") and the New Jersey Fair Credit Reporting Act N.J.S.A. 56:11-28, *et seq*. (the "NJ FCRA").

**PRELIMINARY STATEMENT**

1. This case concerns Defendant T-Mobile USA, Inc.'s ("Defendant," "T-Mobile," or the "Company") willful accessing of sensitive personal information of consumers in violation of the FCRA and NJ FCRA.

2. T-Mobile provides wireless communications services, including voice, messaging and data. The Company conducts "hard" credit inquiries of potential customers in order to determine plan eligibility.

3. T-Mobile, however, routinely and regularly obtains the credit reports of consumers through "hard" credit inquiries, without any permissible purpose. Further, T-Mobile willfully and

1

knowingly obtains consumer reports from credit reporting agencies under false pretenses by representing to consumers that Defendant will only obtain consumer reports through a "soft" credit inquiry, but instead T-Mobile conducts a "hard" credit inquiry when it obtains consumers' reports.

4. Accordingly, Plaintiff, individually, and on behalf of all others similarly situated, seeks to obtain redress for a nationwide class of consumers.

## PARTIES

5. Individual and representative Plaintiff Dean Boone ("Mr. Boone," "Boone," or "Plaintiff") is a resident of Mahwah, New Jersey. Mr. Boone is a member of the Putative Classes defined below, and is a consumer as that term is defined by 15 U.S.C. § 1681a(c) and N.J.S.A. 56:30-11.

6. Defendant T-Mobile is a corporation that provides telephone and data services throughout the country, is registered to do business in the State of New Jersey, and has designated its registered agent for service as Corporation Service Company at 830 Bear Tavern Road, West Trenton, NJ 08628. The corporate office for T-Mobile is located at 4 Sylvan Way, Parsippany, NJ 07054. T-Mobile is a "person" as defined by 15 U.S.C. § 1681a(b) and N.J.S.A. 56:11-30.

7. At all relevant times, Defendant ratified each and every act or omission complained of herein. At all relevant times, Defendant aided and abetted the acts and omissions alleged herein.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

9. This Court has supplemental jurisdiction over Plaintiff's NJ FCRA claim pursuant to 28 U.S.C. § 1367.

10. Venue is proper in the District of New Jersey, Newark Vicinage, as Defendant engages in substantial business activity in this District, and a substantial part of the events or omissions giving rise to the claim occurred within this District, 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

11. On or about April 21, 2016, Plaintiff traveled to a T-Mobile store in Paramus, New Jersey and spoke with an employee of Defendant to make a general inquiry about the availability of cell phone plans and rates.

12. Plaintiff made clear that he did not want his consumer report to be accessed if a "hard" credit inquiry was required.

13. The distinction between a "soft" and "hard" credit inquiry is substantial. Specifically, a "hard" inquiry reduces a consumer's credit score, remains on credit reports for two years, and contains substantially more information (that is confidential and personal) than a "soft" inquiry. Further a "soft" inquiry does not appear on a credit report to any inquiring party[1], and does not lower an individual's credit score. See 15 U.S.C. §§ 1681b(a)(3)(A) and 1681b(c).

14. Moreover, a "hard" inquiry reduces a consumer's credit score, and remains on credit reports for two years, while a "soft" inquiry does neither.

15. The representative agreed that T-Mobile would only obtain Plaintiff's credit report through a "soft" inquiry, and not a "hard" inquiry.

16. Plaintiff did not initiate a transaction, and T-Mobile had no permissible purpose to obtain Plaintiff's credit report. Thus, T-Mobile was required to, but did not receive written

---

[1] A "soft" inquiry is only visible to the individual whom the credit report relates. As such, no inquiring party is able to view the "soft" inquiries, especially the number of soft inquiries that has occurred.

instructions from Plaintiff, as required pursuant to 15 U.S.C. 1681b(a)(2) of the FCRA, prior to accessing Plaintiff's consumer report.

17. Plaintiff never signed any agreement and never agreed to any services from Defendant. Plaintiff only subsequently learned that T-Mobile, without written authorization to do so, had obtained his credit report through a "hard" credit inquiry that appeared on his credit report.

18. Indeed, it is well established that merely inquiring about the possibility of a future transaction, or shopping for rates, is insufficient to satisfy the requirement of the FCRA to initiate the kind of full credit inquiry that is allowed when a consumer has initiated a transaction.

19. Over fifteen years ago, the FTC opined that a customer who "'comes to an automobile dealership and requests information' from a salesman about one or more automobiles" had not initiated a transaction sufficient to allow the dealership to pull a credit report. FTC Letter to Coffey (Feb. 11, 1998), available at http://www.ftc.gov/policy/advisoryopinions/advisory-opinion-coffey-02-11-98, and attached as Exhibit "A".

20. T-Mobile has routinely and systematically obtained credit reports on prospective customers with no permissible purpose or written consent, and does so under false pretenses, resulting in "hard" credit inquiries.

21. T-Mobile continuously obtains full consumer reports under false pretenses by intentionally misleading consumers into believing T-Mobile will not perform a "hard" credit inquiry. T-Mobile then proceeds with conducting a "hard" inquiry, which is recorded on T-Mobile's customers' consumer reports, resulting in a disclosure of unauthorized private information as well as a reduction in credit score.

22. Complaints are found strewn throughout the public domain, but Defendant has done nothing to remedy the illegal behavior, which persists on a systemic basis. For example:



https://www.facebook.com/TMobile/posts/101543490545



https://www.reddit.com/r/tmobile/comments/3vrl57/why_does_tmobile_keep_doing_hard_credit_inquiries/

5



https://www.facebook.com/TMobile/posts/10152373344468895

https://www.facebook.com/TMobile/posts/10154349054518895



https://support.t-mobile.com/thread/80882?start=0&tstart=0

23.     T-Mobile is an established business with access to legal advice through its own general counsel's office and outside counsel, yet still continuously and extensively violates the law even after having been notified of the wrongdoing.

24.     At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant.

7

25.     At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff.

26.     As a result of Defendant's conduct, the Plaintiff and members of the Putative Classes have suffered concrete injuries. In addition to having their privacy invaded, informational injuries, reduction in credit scores (inquiries for which remain on credit reports for two years), Plaintiff and members of the Putative Classes have had their personal identifying information unnecessarily disseminated to the Defendant, and, upon information and belief to its related information-sharing affiliates. Defendant has subjected consumer class members to increased risk of identity theft and/or a data breach, resulting in consequential anxiety and emotional distress. These injuries are particularized and concrete, but difficult to quantify rendering the recovery of class statutory damages ideal and appropriate.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff asserts his claim in Count One individually and on behalf of the "FCRA Impermissible Purpose Class" defined as follows:

> **FCRA Impermissible Purpose Class.** All persons within the United States who had a hard credit inquiry performed on his or her credit by Defendant who had not authorized a hard inquiry, thereby obtaining a persons' credit report without any permissible purpose, within the five years prior to the filing of the Complaint until the date of final judgment in this action.

28.     Plaintiff also asserts his claim in Count One individually and on behalf of the "FCRA False Pretense Class":

> **FCRA False Pretense Class.** All persons within the United States who had a hard credit inquiry performed on his or her credit by Defendant who had not previously authorized a hard inquiry, and without permissible purpose, whose credit reports were obtained

      under false pretenses, within the five years prior to the filing of the
Complaint until the date of final judgment in this action.

29. Plaintiff asserts his claim in Count Two individually and on behalf of the "NJ Impermissible Purpose Class" defined as follows:

> **NJ FCRA Impermissible Purpose Class**. All persons within New Jersey who had a hard credit inquiry performed on his or her credit by Defendant, who had not authorized a hard inquiry, thereby obtaining a persons' credit report without any permissible purpose, within the five years prior to the filing of the Complaint until the date of final judgment in this action.

30. Plaintiff also asserts his claim in Count Two individually and on behalf of the "FCRA False Pretense Class":

> **NJ FCRA False Pretense Class.** All persons within New Jersey who had a hard credit inquiry performed on his or her credit by Defendant who had not previously authorized a hard inquiry, and without permissible purpose, whose credit reports were obtained under false pretenses, within the five years prior to the filing of the Complaint until the date of final judgment in this action.

31. **Numerosity.** The members of the Putative Classes are so numerous that the individual joinder of all of its members is impracticable. While the exact number and identities of the members of the Putative Classes are unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff is informed and believes that the Putative Classes include thousands of members, which can be ascertained by the records maintained by Defendant.

32. **Typicality.** Plaintiff and members of the Putative Classes were harmed by the acts of Defendant in at least the following ways: Defendant routinely accesses consumer credit reports of prospective customers and with no permissible purpose. Moreover, Defendant routinely represents that it will only obtain credit reports through "soft" inquiries, but instead obtained the credit reports of Plaintiff and the Putative Class members through "hard" inquiries. The FCRA

9

and NJ FCRA violations suffered by Plaintiff are typical of those suffered by other members of the Putative Classes, and T-Mobile treated Plaintiff consistent with other members of the Putative Classes.

33. **Adequacy.** Plaintiff is an adequate representative of the Putative Classes. As a person who had his credit report obtained by Defendant without any permissible purpose and under false pretenses, Plaintiff's interests are aligned with, and are not antagonistic to the interests of the members of the Putative Classes. Plaintiff has retained counsel competent and experienced in complex class action litigation.

34. **Commonality.** Common questions of law and fact exist as to all members of the Putative Classes and predominate over any questions solely affecting individual members of the Putative Classes, including but not limited to:

   a. Whether Defendant obtained consumer reports without a permissible purpose and without written authorization;

   b. Whether Defendant obtained consumer reports without a permissible purpose and without written authorization, and under false pretenses by representing to the consumer that credit reports would be obtained through "soft" inquiries, when in fact credit reports were obtained through "hard" inquiries;

   c. Whether Defendant's actions violated the FCRA and NJ FCRA by obtaining consumer reports through false pretenses by representing to the consumer that they were obtaining credit reports through "soft" inquiries, when credit were obtained through "hard" inquiries;

   d. The proper measure of statutory and punitive damages; and

   e. The proper form of injunctive and declaratory relief.

35. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Putative Classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual Putative Class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

36. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Putative Classes as a whole.

37. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA and NJ FCRA. Members of the Putative Classes do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar pending claims brought against Defendant by any members of the Putative Classes on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgment concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In

the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

38. Plaintiff intends to provide notice to all members of the Putative Classes to the extent required by Rule 23. The name and addresses of the Putative Class members are available from Defendant's records.

39. Plaintiff represents, and is a member of the Putative Classes, consisting of all persons within the United States who had a hard inquiry performed on his or her credit by Defendant and such person had not previously authorized a hard inquiry within the five years prior to the filing of the Complaint.

## CAUSES OF ACTION

## COUNT ONE

**(Asserted on behalf of Plaintiff and the FCRA False Pretense Class and FCRA Impermissible Purpose Class)**

**Violation of the Fair Credit Reporting Act**

**15 U.S.C. § 1681** *et seq.*

40. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

41. Plaintiff is a "consumer" as defined by the FCRA.

42. T-Mobile is a "person" as defined by the FCRA.

43. Defendant's conduct violates both 15 U.S.C. § 1681q and 15 U.S.C. § 1681b by obtaining a consumer report under false pretenses by intentionally misleading Plaintiff, or knowingly without a permissible purpose and without authorization from Plaintiff, or permissible purpose.

44. The foregoing violations were willful. T-Mobile knew that it was not authorized to request Plaintiff's credit report, and acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Class members under 15 U.S.C. § 1681b.

45. Plaintiff and the Classes are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 168ln(a)(l)(A).

46. Plaintiff and the Classes are entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

47. Plaintiff and the Classes are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT TWO

**(Asserted on behalf of Plaintiff and the NJ FCRA False Pretense Class NJ FCRA Impermissible Purpose Class)**

**Violation of the New Jersey Fair Credit Reporting Act**

**N.J.S.A. 56:11-28,** *et seq***.**

48. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

49. Defendant's conduct violated the NJ FCRA by obtaining a consumer report under false pretenses or knowingly without a permissible purpose by obtaining Plaintiff's credit report in connection with a credit transaction in which he did not authorize to be involved in, and for no other permissible purpose. N.J.S.A. 56:11-31a; N.J.S.A 56:11-40.

50. The foregoing violations were willful. T-Mobile knew that it was not authorized to request Plaintiff's credit report, and acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Class members.

51. Plaintiff and the Classes are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to N.J. Stat. 56:11-38a(1)(a).

52. Plaintiff and the Classes are entitled to punitive damages for these violations, pursuant to N.J. Stat. 56:11-38a(2).

53. Plaintiff and the Classes are further entitled to recover their costs and attorneys' fees, pursuant to N.J. Stat. 56:11-38a(3).

## PRAYER FOR RELIEF

54. WHEREFORE, Plaintiff, on behalf of himself and the Putative Classes, prays for relief as follows:

   a. Determining that this action may proceed as a class action under Rule 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure;

   b. Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Classes;

   c. Issuing proper notice to the Putative Classes at Defendant's expense;

   d. Declaring that T-Mobile committed multiple, separate violations of the FCRA and the NJ FCRA;

   e. Declaring that T-Mobile acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA and NJ FCRA;

   f. Awarding appropriate equitable relief, including, but not limited to, an injunction forbidding T-Mobile from engaging in further unlawful conduct in violation of the FCRA and the NJ FCRA;

g. Awarding statutory damages and punitive damages as provided by the FCRA and NJ FCRA;

h. Awarding reasonable attorneys' fees and costs;

i. Awarding Plaintiff and the class treble damages where appropriate; and

j. Granting such other and further relief, in law or equity, as this Court may deem just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**THE KIM LAW FIRM, LLC**

BY:    /s/ Richard H. Kim
        Richard Kim, Esquire
        Drucilla Tigner, Esquire
        Attorney I.D. Nos.: 010412005/155772016
        1500 Market St.
        Centre Square – West Tower
        Suite W-3110
        Philadelphia, PA 19102
        Ph. 855-996-6342/Fax 855-235-5855
        rkim@thekimlawfirmllc.com
        dtigner@thekimlawfirmllc.com

        PROFY PROMISLOFF & CIARLANTO, P.C.
        JOSEPH M. PROFY (ID# 013941995)
        JEFFREY J. CIARLANTO (ID# 028762007)
        100 N. 22nd Street, Unit 105
        Philadelphia, PA 19103
        Tel: (215) 259-5156
        Fax: (215) 600-2642
        profy@prolawpa.com
        ciarlanto@prolawpa.com

        FERRARA LAW GROUP, P.C.
        Kevin J. Kotch, Esquire
        Attorney ID No. 050341993

                                                                50 West State Street, Suite 1100  
                                                                Trenton, NJ 08608  
                                                                Ph. 609-57103742/Fax 609-498-7440  
                                                                kevin@ferraralawgp.com

                                                                *Attorneys for Plaintiff Dean Boone*

# EXHIBIT A

**FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

# Advisory Opinion to Coffey (02-11-98)

**TAGS:** Credit Reporting | Privacy and Security | Automobiles

February 11, 1998

Karen Coffey, Chief Counsel
Texas Automobile Dealers Assn.
1108 Lavaca -- P. O. Box 1028
Austin, Texas 78767-1028

**Re:** *Section 604 of the Fair Credit Reporting Act*

Dear Ms. Coffey:

This responds to your letter dated August 29, 1997, asking the views of the Commission staff on a number of issues concerning application of the amended Fair Credit Reporting Act ("FCRA"), including (1) the propriety of an auto dealership obtaining a consumer report from a consumer reporting agency ("CRA") on an individual who visits the showroom, (2) the disclosure required to be provided to a job applicant or current employee before a consumer report may be obtained by the employer, and (3) the items required to be provided to the consumer before adverse action may be taken by the employer based on the report.

1. Section 604(a)(3)(F) permits CRAs to provide consumer reports to any party who has a "legitimate business need for the information in connection with a business transaction that is initiated by the consumer." You ask whether this provision allows a dealer to obtain a consumer report on a person who "comes to an automobile dealership and requests information" from a salesman about one or more automobiles. In our view it does not, because a request for general information about products and prices offered does not involve a business transaction initiated by the consumer.

More generally, you ask "when is the beginning of a business transaction" initiated by the consumer? In responding to this question, it is important to note that Section 604(a)(3)(F) limits this "business need" permissible purpose to transactions (i) that are "initiated" by the consumer and (ii) where the seller has a "legitimate business need" for the information. The staff's view is that an automobile dealer may obtain a report only in those circumstances in which the consumer clearly understands that he or she is initiating the purchase or lease of a vehicle and the seller has a legitimate business need for the consumer report information in order to complete the transaction.

For example, a consumer who asks a dealer questions about prices and financing is not necessarily indicating an intent to purchase or lease a vehicle from that particular dealer. Nor does the dealer have a "legitimate" business need for a consumer report in this situation. The consumer may simply be comparison shopping. In such a situation, the dealer must obtain written permission from the consumer before obtaining a consumer report. If the dealer would like to see a consumer's credit report before answering general questions about the availability of financing, this must be explained to the consumer and written permission must be obtained. In the same way, a request to "test drive" a vehicle does not indicate an intent to initiate the purchase or lease of the vehicle. Accordingly, if a consumer asks to test drive a vehicle, the dealer must obtain written permission from the consumer before obtaining a report.

Only in those circumstances where it is clear both to the consumer and to the dealer that the consumer is actually initiating the purchase or lease of a specific vehicle and, in addition, the dealer has a legitimate business need for consumer report information may the dealer obtain a report without written permission. In this regard, we note that obtaining information for negotiation purposes does not constitute a "legitimate" business need. The dealer must have a specific need for the information directly related to the completion of the transaction. For example, a dealer may obtain a report, if one is necessary, in order to arrange financing requested by the consumer.(1) The dealer may also obtain a report to check a consumer's creditworthiness when the consumer presents a personal check to pay for the vehicle. By contrast, a permissible purpose would not arise if a consumer intends to pay by cash.

2. Section 604(b)(2)(A) requires consumer report users, before procuring a report for employment purposes, to make a written disclosure to the consumer "in a document that consists solely of the disclosure" that a consumer report may be obtained for employment purposes. You ask whether a party that has secured an employee's authorization for the report in an employment application must also make the disclosure in a separate document. The answer is yes, because Section 604(b)(2)(A) specifically states that the document containing the required disclosure may not include other items.

You also ask what information may appear on the document and if "the FTC is suggesting that the document be of a certain size." It is our view that Congress intended that the disclosure not be encumbered with extraneous information. However, some additional information, such as a brief description of the nature of the consumer reports covered by the disclosure, may be included if the information does not confuse the consumer or detract from the mandated disclosure. We suggest no size requirement for the disclosure; a document that meets the "clear and conspicuous" standard set by the FCRA will be acceptable.

3. Finally, you ask two questions relating to Section 604(b)(3), which requires an employer "before taking any adverse action" based on a consumer report, to provide the consumer with a copy of the report and the summary of consumer FCRA rights prescribed by the Commission. First, you ask if a CRA is responsible for sending the required summary to employers. The answer is yes, because Section 604(b)(1)(B) imposes this duty on CRAs that provide reports for employment purposes. Second, you ask if there is any specific amount of time that must elapse from the time the required items are provided to the consumer and the employer's adverse employment action. The law is silent as to how long the employer must wait after making the Section 604(b)(3) pre-adverse action disclosure before actually taking adverse action; it states only that the specified items be provided before the adverse action is taken. Employers may wish to consult with their counsel in order to develop procedures that are appropriate, keeping in mind the clear purpose of the provision to allow consumers to discuss the report with employers before adverse action is taken.

The opinions set forth in this informal staff letter are not binding on the Commission.

Yours truly,

David Medine

1. The dealer's "permissible purpose" here is provided by Section 604(a)(3)(A), which permits the use of co

ftc.gov