## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

|  |  |
|---|---|
| **DEAN BOONE, individually, and on behalf of all others similarly situated,** : : : : | |
| **PLAINTIFF,** : : | **Civil Action No. 2:17-cv-00378** |
| **v.** : : | |
| **T-MOBILE USA, INC.,** : : | |
| **DEFENDANT.** : : | |

## PLAINTIFF DEAN BOONE'S BRIEF IN OPPOSITION TO
## DEFENDANT T-MOBILE'S MOTION TO DISMISS AND
## BRIEF IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO AMEND
## TO BE HEARD ON SEPTEMBER 18, 2017

Respectfully submitted,

**THE KIM LAW FIRM, LLC**

BY:     */s/ Richard H. Kim*
       Richard Kim, Esquire
       Drucilla Tigner, Esquire
       Attorney I.D. Nos.: 010412005/155772016
       1500 Market St.
       Centre Square – West Tower
       Suite W-3110
       Philadelphia, PA 19102
       Ph. 855-996-6342/Fax 855-235-5855
       rkim@thekimlawfirmllc.com
       dtigner@thekimlawfirmllc.com

PROFY PROMISLOFF & CIARLANTO, P.C.
JOSEPH M. PROFY (ID# 013941995)
JEFFREY J. CIARLANTO (ID# 028762007)
100 N. 22nd Street, Unit 105

Philadelphia, PA 19103
Tel: (215) 259-5156
Fax: (215) 600-2642
profy@prolawpa.com
ciarlanto@prolawpa.com

FERRARA LAW GROUP, P.C.
Kevin J. Kotch, Esquire
Attorney ID No. 050341993
50 West State Street, Suite 1100
Trenton, NJ 08608
Ph. 609-57103742/Fax 609-498-7440
kevin@ferraralawgp.com

*Attorneys for Plaintiff Dean Boone*

Dated: August 23, 2017

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT .........................................................................................1

FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY....................................3

ARGUMENT .......................................................................................................................4

A.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ............................6

    i.   Plaintiff has Established Standing to Assert His Claims Under the FCRA and NJ FCRA Because T-Mobile's Violations Resulted in Privacy Harms and Damage to Plaintiff's Creditworthiness ........................................................................................................6

B.   T-MOBILE VIOLATED SECTIONS 1681q AND 1681b ....................................................14

    i.   There is a Private Right of Action Under 15 U.S.C. §§ 1681q and 1681b....................14

    ii.   Defendant Had No Permissible Purpose to Access Plaintiff's Credit Report ...............19

    iii.   Plaintiff's Claims Under the NJ FCRA Have Been Adequately Plead .........................24

PLAINTIFF'S CROSS-MOTION TO AMEND THE THIRD AMENDED COMPLAINT........25

A.   Plaintiff Has Met the Standard for Obtaining Leave to File an Amended Complaint Under Rule ..................................................................................................................................25

    i.   Defendant is Not Prejudiced by Plaintiff's Motion .......................................................26

    ii.   Plaintiff's Request to File a Second Amended Complaint is Not Futile and Should be Allowed.........................................................................................................................18

        a.   Plaintiff Has Properly Plead Violations of §§ 1681b and 1681q of the FCRA 28

CONCLUSION...................................................................................................................30

i

## **TABLE OF AUTHORITIES**

## **CASES**

Adams v. Fifth Third Bank, No. 3:16-CV-00218-TBR, 2017 WL 561336 (W.D. Ky. Feb. 10,
    2017)...................................................................................................................... 11

Adams v. Gould Inc., 739 F.2d 858 (3d Cir. 1984) ..................................................... 27

Bechtel v. Robinson, 886 F.2d 644 (3d Cir.1989) ........................................................ 26

Bell v. Hood, 327 U.S. 678 (1946) .......................................................................... 8, 12

Burghy v. Dayton Racquet Club, Inc., 695 F. Supp. 2d 689 (S.D. Ohio 2010)........................... 18

Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F.Supp.2d 340 (E.D.N.Y. 2010). 16,
    18

Calzaturificio Rangoni, S.A. v. U.S. Shoe Corp., 92 CIV. 2020 (JFK), 1993 WL 485753
    (S.D.N.Y. Nov. 23, 1993) ....................................................................................... 27

Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347 (3d Cir. 2014) ....................... 13, 29

Cooper v. Pressler & Pressler, LLP, 912 F.Supp.2d 178 (D.N.J. 2012)................................. 10, 22

Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n, 573 F.2d 820 (3d Cir.
    1978)...................................................................................................................... 26

Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267 (3d Cir. 2001)............................. 26, 27

Cushman v. Trans Union Corp., 115 F.3d 220 (3d Cir. 1997) ..................................................... 14

Cowell v. Palmer Township, 263 F.3d 286 (3d Cir.2001)........................................................... 28

Daley v. Haddonfield Lumber Inc., 943 F.Supp. 464 (D.N.J. 1996)................... 15, 17, 19, 23, 29

Davis v. Reg'l Acceptance Corp., 300 F.Supp.2d 377 (E.D. Va. 2002) ....................................... 17

Diedrich v. Ocwen Loan Servicing, LLC, No. 15–2573, 2016 WL 5852453 (7th Cir. Oct. 6,
    2016)................................................................................................................... 2, 11

Dole v. Arco Chem. Co., 921 F.2d 484 (3d Cir. 1990)............................................................. 5, 26

Frazier v. Vintage Stock, Inc., No. CIV-15-550-D, 2016 WL 6952316 (W.D. Okla. Nov. 28, 2016)................................................................................................................................ 18

Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528, 185 L. Ed. 2d 636 (2013) .......... 13

Gilliard v. Athena Funding Group, Inc., 2011 WL 4711956 (M.D. Fla. Oct. 5, 2011)................ 16

Gomeringer v. Pack, CIV.A. 6:15-1048-TMC, 2015 WL 5158742 (D.S.C. Sept. 2, 2015) ........ 17

Harkins v. Diversified Collection Servs., Inc., No. CIV. PJM 12-1229, 2012 WL 5928997 (D. Md. Nov. 26, 2012) .............................................................................................................. 11

Harrison Beverage Co. v. Dribeck Imp., Inc., 133 F.R.D. 463 (D. N.J. 1990)............................ 28

Hernandez v. Lamboy Furniture, Inc., CIV.A.07-00240, 2008 WL 4061344, (E.D. Pa. Sept. 2, 2008).................................................................................................................................. 15

Hinton v. Trans Union L.L.C., 2004 WL 1114744 (N.D. Ill. May 4, 2004) ............................... 15

Hishon v. King & Spalding, 467 U.S. 69 (1984) ......................................................................... 6

Huertas v. Citigroup, Inc., 639 Fed.Appx. 798 (3d Cir. 2016) .................................................. 22

Huertas v. Galaxy Asset Mgmt., 641 F.3d 28 (3d Cir. 2011)................................................. 15, 22

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir.1997) .................................... 26

In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125 (3d Cir. 2015).... 6, 9

In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625 (3d Cir. 2017).milborn5, 6, 8, 9,10, 28

In re Nickelodeon, 827 F.3d 262 (3d Cir. 2016)......................................................................... 10

In re Rockefeller  Ctr. Props., Inc. Sec. Litig., 311 F.3d 198 (3d Cir. 2002)................................. 6

Kanter v. Barella, 489 F.3d 170 (3d Cir.2007) .......................................................................... 4

Kennedy v. Border City Sav. & Loan Ass'n, 747 F.2d 367 (6th Cir. 1984)................................. 16

Markert v. PNC Fin. Servs. Grp., Inc., 828 F. Supp. 2d 765 (E.D. Pa. 2011) ........................ 27, 28

Massachusetts v. E.P.A., 549 U.S. 497 (2007) ..................................................... 13, 29

Massachusetts Mut. v. Orenyo, CIV. 96-5234 (WGB), 1998 WL 1297799 (D.N.J. July 24, 1998)

................................................................................................................... 17, 19

Milbourne v. JRK Residential Am., LLC, 92 F.Supp.3d 425 (E.D. Va. 2015) ........................... 16

Robins v. Spokeo, Inc., 11-56843, 2017 WL 3480695 (9th Cir. Aug. 15, 2017) ......................... 8

Santangelo v. Comcast Corp., 162 F.Supp.3d 691 (N.D. Ill. 2016) ................................... 8, 11, 29

Schroeder v. Capitol Indemnity Corp., 2006 WL 2009053 (E.D. Wis. July 17, 2006) ............... 18

Slack v. Suburban Propane Partners, L.P., No. 10-2548 JLL, 2010 WL 3810870 (D.N.J. Sept. 21,

2010) ................................................................................................................ 12

Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016) ............................................... 6, 7, 8, 9

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998) ........................................ 7

Stergiopoulos & Ivelisse Castro v. First Midwest Bancorp, Inc., 427 F.3d 1043 (7th Cir. 2005) 21

Susinno v. Work Out World Inc., 862 F.3d 346 (3d Cir. 2017) .......................................... 6, 7, 9

Swierkiewicz v. Sorema, NA ., 534 U .S. 506 (2002) ..................................................... 5

Vanaman v. Nationstar Mortgage, LLC, 215CV00906KJDNJK, 2017 WL 1097189 (D. Nev.

Mar. 22, 2017) ...................................................................................................... 10

Young v. St. Luke's Hosp., 09-CV-03460, 2010 WL 1348468 (E.D. Pa. Mar. 30, 2010) ........... 27

Zieger v. J.A. Cambece Law Office, P.C., CIV. 14-2965 RBK/JS, 2015 WL 3647267 (D.N.J.

June 12, 2015) .................................................................................................. 15, 29

## Statutes

15 U.S.C. § 1681a. .......................................................................................... 2, 21

15 U.S.C. §§ 1681b ................................... 1, 2, 3, 9, 10, 16, 15, 18, 19, 21, 22, 23, 25, 28, 29

15 U.S.C. § 1681m(h)(8) ........................................................................... 16

15 U.S.C. § 1681n ............................................... 1, 2, 14, 15, 16, 17, 18, 19, 29

15 U.S.C. § 1681q ............................. 1, 2, 14, 15, 16, 17, 18, 19, 23, 25, 28, 29

Fed. R. Civ. P. 15(a) ............................................................................... 25

Fed. R. Civ. P. 12(b)(1) ....................................................................... 1, 4, 6

Fed. R. Civ. P. 12(b)(6) ....................................................................... 1, 4, 5

N.J.S.A. 56:11-31 ......................................................................... 1, 2, 24, 25

N.J.S.A. 56:11-40 ......................................................................... 1, 2, 24, 25

## **Other Authorities**

FTC Letter to Coffey (Feb. 11, 1998) ..................................................... 1, 20

Merriam Webster's Dictionary ................................................................. 22

Restatement (Second) of Torts § 652A (1977) ............................................. 9

Plaintiff Dean Boone ("Mr. Boone" or "Plaintiff") opposes Defendant T-Mobile, Inc.'s ("T-Mobile" or "Defendant") Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) (the "Motion") (ECF Doc. 33), and Plaintiff moves this Court to allow Plaintiff to amend the Second Amended Complaint (the "Complaint").

## PRELIMINARY STATEMENT

T-Mobile makes much ado about Plaintiff's permitted amendments to the complaint, and tellingly fails to exert the same effort in discussing the merits of Plaintiff's claims.  This misdirection is intended to divert the Court's attention away from T-Mobile's willful flouting of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") and the New Jersey Fair Credit Reporting Act, N.J.S.A. 56:11-28, *et seq*. (the "NJ FCRA").  T-Mobile argues that dismissal of this matter is warranted because the Court lacks jurisdiction since Mr. Boone has not suffered a concrete injury in fact - and even if jurisdiction exists - T-Mobile did not violate any provision of the FCRA or NJ FCRA.  Neither position has merit.

T-Mobile has willfully violated the FCRA (and for the same reasons the NJ FCRA) by accessing Plaintiff's credit report without a permissible purpose, and under false pretenses. 15 U.S.C. §§ 1681b, 1681q, and 1681n(a)(1)(A).[1]  FTC Letter to Coffey (Feb. 11, 1998) (explaining that "a request for general information about products and prices offered does not involve a business transaction initiated by the consumer.").  T-Mobile acknowledges as much in its Brief by citing incorrect statutes as a basis to improperly dismiss Plaintiff's claims, and further asserting there is no private right of action for the violations of 15 U.S.C. §§ 1681b and 1681q.  For several

---

[1]    As detailed in Plaintiff's Cross-Motion, the accessing of the report is a separate violation under the FCRA (15 U.S.C. §§ 1681b) and NJ FCRA (N.J.S.A. 56:11-31).  Thus, there should be two additional classes noted within the Complaint clarifying the aggrieved groups for T-Mobile's wrongdoing.

reasons, Defendant's assertion is false, including the express language of the FCRA. See 1681n(a)(1)(A) (stating that "any person"[2] may be liable for the willful noncompliance with "any requirement" within the Statute.).

These violations of the FCRA resulted in substantive and concrete harms to Mr. Boone, conferring Article III Standing.  T-Mobile accessed, without a permissible purpose, Plaintiff's personal and private credit information, resulting in a concrete privacy injury. Plaintiff also suffered a concrete harm through the hard inquiry initiated by T-Mobile, which resulted in a reduced credit score, which negatively impacted Mr. Boone's credit worthiness. See Diedrich v. Ocwen Loan Servicing, LLC, No. 15–2573, 2016 WL 5852453, at *4 (7th Cir. Oct. 6, 2016) (finding that plaintiffs alleged an injury for purposes of standing where plaintiffs claimed to have "suffered damage to their credit."). Accordingly, T-Mobile's Motion should be dismissed.

Plaintiff also respectfully cross moves the Court for leave to file a Third Amended Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. The Third Amended Complaint simply adds two putative classes to the Complaint for T-Mobile's violations of 15 U.S.C. 1681b and N.J.S.A 56:11-31, which has already been asserted in the Complaint.  Thus, these two additional classes clarify that there are two separate, but additional groups for the violations of §1681b and N.J.S.A. 56:11-31.  As explained further below, even if T-Mobile did not violate § 1681q and N.J.S.A. 56:11-40, and there are no false pretenses found, T-Mobile still violated 1681b and N.J.S.A. 56:11-31 by acquiring credit reports without a permissible purpose, which would have required written authorization by T-Mobile.   Moreover, the proposed amendment does not prejudice Defendant.  No discovery has occurred, and the T-Mobile is already

---

[2]     Section 1681a(b) defines a "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity.

2

on notice of the claims that serve as the basis for the two additional classes.  Plaintiff discovered

the need for further clarification of the classes prior to filing his Second Amended Complaint which

occurred on June 28, 2017.  Plaintiff requested consent from Defendant to include changes to the

Second Amended Complaint prior to the filing of the Second Amended Complaint, but Defendant

refused, and only agreed to permit Plaintiff to file a Second Amended Complaint in the form as

attached to Plaintiff's Motion to Amend from June 1, 2017.  Because of Defendant's refusal to

consent to the amendment to be included with the Second Amended Complaint prior to filing,

Plaintiff is required to file this cross motion to amend.

### FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

On or about April 21, 2016, Plaintiff traveled to a T-Mobile store in Paramus, New Jersey,

and spoke with an employee of Defendant to make a general inquiry about the availability of cell

phone plans and rates.  While comparison-shopping for a potential plan, Plaintiff made clear that

he did not want his consumer report to be accessed if a "hard" credit inquiry was required.  The

representative agreed that T-Mobile would only obtain Plaintiff's credit report through a "soft"

inquiry and not a "hard" inquiry.

The distinction between a "soft" and "hard" credit inquiry is substantial.  Specifically, a

"hard" inquiry reduces a consumer's credit score, remains on credit reports for two years, and

contains substantially more information (that is confidential and personal) than a "soft" inquiry.

See 15 U.S.C. §§ 1681b(a)(3)(A) and 1681b(c).  Further a "soft" inquiry does not appear on a

credit report to any inquiring party[3], and does not lower an individual's credit score.

---

[3]     A "soft" inquiry is only visible to the individual whom the credit report relates.  As such,
an inquiring person is not able to view the "soft" inquiries, especially the number of "soft" inquiries
that has occurred.

T-Mobile was required to obtain written instructions (basis for the additional class) from Plaintiff to obtain his credit report through a "hard" inquiry, but it failed to do so. Plaintiff left the T-Mobile store without obtaining services or purchasing products from T-Mobile, and never signed any documentation. Plaintiff only subsequently learned that T-Mobile, without authorization, had obtained his credit report through a "hard" credit inquiry that appeared on his credit report.

On January 19, 2017, Plaintiff filed his initial complaint and amended the complaint twice thereafter (once by right). On June 1, 2017, Plaintiff moved to amend the Amended Complaint. On June 15, 2017, the parties attended a scheduling conference before the Honorable Michael A. Hammer. At the conference, the parties agreed to permit Plaintiff to file Second Amended Complaint. On June 28, 2017, Plaintiff filed the Second Amended Complaint and on July 26, 2017, Defendant filed this Motion. As discussed further in the cross-motion, prior to filing the Second Amended Complaint, Plaintiff requested that Defendant consent to additional changes prior to filing the Second Amended Complaint. T-Mobile did not provide consent, forcing Plaintiff to submit the instant cross-motion.

## **STANDARD OF REVIEW**

Defendant moves to dismiss Plaintiff's claims under Rules 12(b)(1) and 12(b)(6). Under both Rules, the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir.2007).

When deciding a Rule 12(b)(1) motion to dismiss, the court must first determine whether the motion presents a "'facial' attack" or a "'factual' attack" on the claim at issue because that distinction determines "how the pleading must be reviewed." Constitution Party of Pa. v. Aichele,

757 F.3d 347, 357-58 (3d Cir. 2014) (citations omitted).  A facial attack calls for the court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, accepting as true the facts alleged in the complaint and construing those facts in favor of the nonmoving party.  <u>Id</u>.  Here, Defendant has instituted a facial attack on the Court's jurisdiction to hear this matter by alleging that Plaintiff lacks Article III standing claiming he has not suffered a concrete injury.  (Def.'s Brief pg. 4).

Additionally, the standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is an extremely liberal standard favoring plaintiffs.  The basis for this liberality is to allow a determination to be made on the full merits of the case.  <u>Dole v. Arco Chem. Co.</u>, 921 F.2d 484, 486 (3d Cir. 1990).  "In the context of a motion to dismiss, [the Third Circuit has] held that the [i]njury-in-fact element is not Mount Everest.  The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege[ ] some specific, identifiable trifle of injury."  <u>In re Horizon Healthcare Servs. Inc. Data Breach Litig.</u>, 846 F.3d 625, 633–34 (3d Cir. 2017) citing <u>Blunt v. Lower Merion Sch. Dist.</u>, 767 F.3d 247, 278 (3d Cir. 2014) (emphasis omitted) (citation and internal quotation marks omitted) (second alteration in original).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim."  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citation and internal quotation marks omitted) (alteration in original).  Thus, in order for a motion to dismiss for failure to state a claim to be appropriately granted it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  <u>Swierkiewicz v. Sorema, NA</u>., 534 U .S. 506, 514 (2002) (citation omitted).  Beyond the mandate that the Court must

5

accept all well-pleaded allegations of the complaint as true, any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the Plaintiff.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  "The inquiry is not whether [Plaintiff] will ultimately prevail in a trial on the merits, but whether [he] should be afforded an opportunity to offer evidence in support of [his] claims." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002).

## ARGUMENT

### A.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS MATTER

#### i.   Plaintiff has Established Standing to Assert His Claims Under the FCRA and NJ FCRA Because T-Mobile's Violations Resulted in Privacy Harms and Damage to Plaintiff's Creditworthiness

Defendant challenges this Court's subject-matter jurisdiction under Rule 12(b)(1), incorrectly arguing that the Plaintiff has not suffered a concrete injury-in-fact under the Supreme Court's decision in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016).  (Def.'s Brief p. 5).  This position is false, and fails to recognize Plaintiff's privacy and credit harms. See Susinno v. Work Out World Inc., 862 F.3d 346, 352 (3d Cir. 2017); In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 633–34 (3d Cir. 2017); In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125, 134-135 (3d Cir. 2015), cert. denied sub nom. Gourley v. Google, Inc., 137 S. Ct. 36, 196 L. Ed. 2d 26 (2016).

For federal court standing, the injury must be both (1) particularized and (2) concrete. Defendant does not dispute that Plaintiff's injuries are particularized, only that they are not "concrete."  Elaborating on the meaning of concreteness, the Court in Spokeo distilled several "general principles" from its prior cases, without going beyond those cases.  Id. at 1549.  First, it acknowledged that, although tangible injuries (like physical or economic harm) are "perhaps

6

easier to recognize" as concrete injuries, "intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm."  Id.  Second, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." Id.  Thus, if the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"— or, put in fewer words, if "the common law permitted suit" in analogous circumstances — the plaintiff will have suffered a concrete injury that can be redressed by a federal court.  Id.; see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998) (explaining that Article III encompasses "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.").

But the plaintiff need not dig up a common-law analogue to establish a concrete injury, because Congress has the power (and is in fact "well positioned") "to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law."  Spokeo, 136 S.Ct. at 1549.  Accordingly, the third principle emphasized in Spokeo is that Congress can elevate even procedural rights to a concrete injury if they protect against an identified harm.  See Susinno v. Work Out World Inc., 862 F.3d 346, 352 (3d Cir. 2017) (holding that Congress can elevate "a harm that, while 'previously inadequate at law,' was of the same character of previously existing 'legally cognizable injuries.'" (quoting Spokeo, 136 S.Ct. at 1549) and "[w]here a plaintiff's intangible injury has been made legally cognizable through the democratic process, and the injury closely relates to a cause of action traditionally recognized in English and American courts, standing to sue exists.").  Of course, "a bare procedural violation, divorced from any concrete harm" identified by Congress, will not give rise to an Article III injury.  Spokeo, 136 S.Ct. at 1549.  But a "person who has been accorded a procedural right to protect his concrete interests" has standing to assert that right,

and may do so "without meeting all the normal standards for redressability and immediacy." Lujan, 504 U.S. at 572 n.7.

Despite these truths, Defendant mistakenly argues that Plaintiff has not suffered any "actual damages" and thus has no Article III standing. (Def.'s Brief p. 5). To demonstrate an injury for Article III standing, Plaintiff is not required to prove "actual damages," Plaintiff must simply plead that he has suffered a concrete injury in fact. Bell v. Hood, 327 U.S. 678, 682 (1946) ("[W]hether the Plaintiff has sufficiently pleaded her actual damages is a different inquiry from whether the court has jurisdiction."); Robins v. Spokeo, Inc., 11-56843, 2017 WL 3480695, at *7 (9th Cir. Aug. 15, 2017) (holding that even if the likelihood of actual harm is debatable, errors on a credit report still give rise to an injury in fact as long as they are not "the sort of 'mere technical violation[s]' which are too insignificant to present a sincere risk of harm to the real-world interests that Congress chose to protect with FCRA." (quoting In re Horizon Healthcare, 846 F.3d at 638.)).

Here, T-Mobile's violations of the FCRA caused Plaintiff several types of well-established concrete injuries – including invasion of privacy and damage to credit worthiness – each of which are sufficient alone to confer Article III standing. See In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d at 641 (determining that "'unauthorized disclosure of information' have long been seen as injurious" and further holding that "[O]ur precedent and congressional action lead us to conclude that the improper disclosure of one's personal data in violation of FCRA is a cognizable injury for Article III standing purposes.") (citation omitted); Santangelo v. Comcast Corp., 162 F.Supp.3d 691, 698 (N.D. Ill. 2016) ("[A] depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing.").

First, Defendant has violated Plaintiff's rights under the FCRA and has grossly invaded his privacy. T-Mobile's illegal intrusion into Plaintiff's personal credit report information violates the

express restrictions of 15 U.S.C. § 1681b.  Protection of Plaintiff's privacy in this regard is a stated

purpose of the FCRA.  See 15 U.S.C. § 1681b.  In fact, Congress dedicated an entire section of

the Act to ensuring that a consumer's private personal and financial information is released only

under specific, enumerated instances, discussed further below.  See id.  Nevertheless, T-Mobile

has obtained Plaintiff's credit file without authorization, and delved through his private, personal

and financial information without any permissible purpose to do so.

Not only is this kind of wanton disregard for consumer privacy more than a "bare,

procedural violation" of the law, invasion of privacy is a quintessential "harm that has traditionally

been regarded as providing a basis for a lawsuit in English or American courts," and thus is a

legally cognizable injury for standing purposes.  Spokeo, 136 S.Ct. at 1549.  For more than a

century, American courts have recognized that "[o]ne who invades the right of privacy of another

is subject to liability for the resulting harm to the interests of the other."  Restatement (Second) of

Torts § 652A (1977); see id. cmt. a (noting that "the existence of a right of privacy is now

recognized in the great majority of the American jurisdictions").  Since Spokeo, the Third Circuit

has repeatedly reaffirmed that an invasion of privacy constitutes a sufficient concrete injury to

satisfy Article III standing.  Susinno, 862 F.3d at 352 (holding that one single recorded phone call

to the plaintiff's cell phone was an invasion of privacy and an injury in fact in a TCPA claim.); In

re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 638, 641[4]; see also In re Google

---

[4]      Defendant unsuccessfully attempts to distinguish In re Horizon in its brief. (Def.'s Brief p.
7, fn. 2). In re Horizon affirmed the fact that "'unauthorized disclosure of information' have long
been seen as injurious" and that "[O]ur precedent and congressional action lead us to conclude that
the improper disclosure of one's personal data in violation of FCRA is a cognizable injury for
Article III standing purposes."  Defendant claims that In re Horizon does not apply because
Plaintiff consented to Defendant obtaining the information and that Defendant has a permissible
purpose to do so. However, as discussed extensively in this brief, Defendant obtained Plaintiff's
personal information against his will and without a permissible purpose through a "hard" inquiry.

<u>Inc. Cookie Placement Consumer Privacy Litig.</u>, 806 F.3d at 134-135 ("the fact that plaintiffs' injury is non-monetary is not dispositive"); <u>In re Nickelodeon</u>, 827 F.3d 262, 274 (3d Cir. 2016) (holding that after <u>Spokeo</u> the "unlawful disclosure of legally protected information" remains "a clear de facto injury.").

  Consistent with this well-reasoned and binding decision, this Court should find that Plaintiff has standing and that his proposed amendment would not be futile.  Defendant argues, however, that Plaintiff has no privacy harm because he consented to a "soft" credit inquiry.  A "soft" inquiry, however, is utilized in instances when a consumer has not initiated a transaction, and is permitted without authorization.  Reason being, a "soft" inquiry **only provides limited information about the consumer**.  See 15 U.S.C. §§ 1681b(a)(3)(A) and 1681b(c); <u>see also</u> <u>Cooper v. Pressler & Pressler, LLP</u>, 912 F.Supp.2d 178, 187 (D.N.J. 2012) ("[A] 'soft pull,' [is], a request for updated address information only." (internal quotation and citation omitted)); <u>Vanaman v. Nationstar Mortgage, LLC</u>, 215CV00906KJDNJK, 2017 WL 1097189, at *1 (D. Nev. Mar. 22, 2017) ("A soft pull does not provide individual account or tradeline information found on a full consumer report obtained for a "hard pull" for the extension of credit.").

  A "soft" inquiry only provides the following information: (A) the name and address of a consumer; (B) an identifier that is not unique to the consumer and that is used by the person solely for the purpose of verifying the identity of the consumer; and (C) other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity.  15 U.S.C. § 1681b(c)(2).  An illustration of "soft" inquiries are where credit card companies provide "pre-approved" credit offers.  These "pre-approvals" are

---

The fact that the disclosure of a consumer's data happened under different circumstances in <u>In re Horizon</u> is irrelevant.

conditioned upon the credit offering institution obtaining a full credit report through a "hard" inquiry, after having conducted the initial "soft" inquiry.  Thus, Plaintiff, at most, verbally consented to T-Mobile viewing highly limited information, that would not result in any credit score reduction.  Instead, T-Mobile accessed Plaintiff's most private financial information without his written consent, which was required. As such, Plaintiff has suffered a privacy harm caused by Defendant's conduct.

Moreover, Plaintiff has suffered a concrete injury by way of harm to his credit score, which directly negatively impacts his credit worthiness.  The FCRA is specifically designed to prevent a negative impact on creditworthiness that comes with inaccurate or erroneous information being placed on a consumer's credit report.  Courts that have analyzed this issue have resoundingly determined that a credit score reduction is a concrete harm sufficient to confer Article III standing. See Diedrich v. Ocwen Loan Servicing, LLC, No. 15–2573, 2016 WL 5852453, at *4 (7th Cir. Oct. 6, 2016)  (finding that plaintiffs alleged an injury for purposes of standing where plaintiffs claimed to have "suffered damage to their credit."); Santangelo v. Comcast Corp., 162 F.Supp.3d 691, 698 (N.D. Ill. 2016) ("[A] depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing.") Adams v. Fifth Third Bank, No. 3:16-CV-00218-TBR, 2017 WL 561336, at *4 (W.D. Ky. Feb. 10, 2017) ("Plaintiffs' allegations of lower credit scores, taken as true for the purposes of Fifth Third's motion for judgment on the pleadings, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III.")

Thus, when a consumer's credit score is lowered, no matter the amount, the consumer's overall "creditworthiness" is also negatively impacted.  Significantly, each hard inquiry results in a reduction of a credit score of approximately five points or more.  See Harkins v. Diversified Collection Servs., Inc., No. CIV. PJM 12-1229, 2012 WL 5928997, at *1 n.1 (D. Md. Nov. 26,

11

2012).  A reduced credit score not only impacts the consumer's ability to gain credit, but also alters a consumer's mindset as to what credit he should attempt to apply for.  The harm to Plaintiff's credit score goes well beyond a "bare procedural allegation."  It is a concrete and actual harm that immediately impacts a consumer.  One of the FCRA's foundational purposes was to arm consumers against entities who improperly damage the consumer's credit.  In this case, Plaintiff's credit score was negatively impacted by T-Mobile's wrongdoing, which significantly bears on Plaintiff's creditworthiness.[5]

In Defendant's Brief, it misleadingly argues that a reduction of credit is not sufficient to confer Article III standing by citing Slack v. Suburban Propane Partners, L.P., No. 10-2548 JLL, 2010 WL 3810870, at *8 (D.N.J. Sept. 21, 2010).  However, in Slack, the Court determined only that a credit score reduction is too speculative to determine *actual damages*, and the court made no comment as to standing.  Defendant's reliance on Slack demonstrates a fundamental misunderstanding in the distinction between an inability to show an injury in fact for standing purposes and a failure to prove a harm in order to state a claim for actual damages (FCRA allows for the potential of actual, statutory and punitive damages). The Supreme Court in Bell v. Hood, 327 U.S. 678, 682 (1946) has made clear that "[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which [Plaintiff] could actually recover.  For it is well settled that the failure to state a proper cause of action calls for a judgment

---

[5]     Defendant refers to a prior iteration of Plaintiff's complaint to argue that Plaintiff cannot show that the harm to Plaintiff's credit was fairly traceable to T-Mobile's violation of the FCRA. (Def.'s Brief p. 8, fn.3).  Plaintiff's prior complaints are a legal nullity and any argument by Defendant based on those earlier versions should not be given any weight.  See W. Run Student Hous. Associates, LLC v. Huntington Nat. Bank, 712 F.3d 165, 173 (3d Cir. 2013) (3d Cir. Apr. 4, 2013) ("[A]t the motion to dismiss stage, when the district court typically may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint.").

on the merits and not for a dismissal for want of jurisdiction. Accordingly**,** *whether the Plaintiff has sufficiently pleaded her actual damages is a different inquiry from whether the court has jurisdiction*." 327 U.S. 678, 682 (1946) (emphasis added)

T-Mobile also claims that Plaintiff fails to allege facts sufficient to establish a causal nexus between the harms Plaintiff has suffered and the injuries those harms caused. (Def.'s Brief p. 8). However, T-Mobile misrepresents the nature of causation in the context of standing, stating incorrectly that Plaintiff must show a direct link between Plaintiff's injury in fact and Defendant's wrong doing.   Rather, an incremental link is all that is required.  Specifically, "[c]ausation in the context of standing is not the same as proximate causation from tort law." Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 366 (3d Cir. 2014).  Concurrent causation is permissible in standing analysis, and as long as the conduct is at least in part responsible for a plaintiff's injury, causation is established for standing purposes.  Id.  If the connection between the conduct and the injury is traceable, "an indirect causal relationship will suffice."  Id.; Massachusetts v. E.P.A., 549 U.S. 497, 524 (2007) (The Court held that causation is present even if there is only an incremental link between the challenged action and asserted injury.).  T-Mobile's willful violations of the FCRA resulted in Plaintiff's invasion of privacy and credit harm. The causal link between T-Mobile's statutory violations and the privacy injuries and credit harm are directly related and elaborated on throughout Plaintiff's Brief.

Finally, Defendant claims that Plaintiff also lacks standing to bring his NJ FCRA Claim. (Def. Brief p. 9).  See Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528, 185 L. Ed. 2d 636 (2013) ("Article III, § 2, of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies," which restricts the authority of federal courts to resolving "'the legal rights of litigants in actual controversies. . .'").  However, Plaintiff has standing to bring his NJ FCRA

13

claims for the same reasons he has standing to bring his FCRA Claims. The elements of the violated sections of the NJ FCRA are fundamentally the same as those of the cited FCRA provisions. As a result of Defendant's violations of the NJ FCRA, Plaintiff has suffered a privacy injury and harm to his creditworthiness, which were directly caused by Defendant's wrongdoing.[6]

**B.   T-MOBILE VIOLATED SECTIONS 1681q AND 1681b**

Plaintiff has alleged that T-Mobile has violated two separate provisions of the FCRA: (1) T-Mobile violated 15 U.S.C. § 1681q by obtaining Plaintiff's credit report under false pretenses and (2) T-Mobile also violated 15 U.S.C. § 1681b by obtaining Plaintiff's credit report without a permissible purpose. Violations of each section triggers civil liability under 15 U.S.C. § 1681n(a)(1)(A), which states "Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is labile to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as result of the failure or damages of not less than $100 and not more than $1,000." Plaintiff has stated a claim for both violations independently of each other in the Complaint.

**i.   There is a Private Right of Action Under 15 U.S.C. §§ 1681q and 1681b**

Defendant falsely claims that there is no private right of action under either Sections 1681q or 1681b of the FCRA and that Plaintiff may only bring his claims pursuant to Section 1681n(a)(1)(B). However, the express wording of the FCRA and case law confirm otherwise.

The FCRA imposes liability on "any person" who willfully fails to comply with any requirement of the Act with respect to consumers. 15 U.S.C. § 1681n(a)(1)(B); see also Cushman v. Trans Union Corp., 115 F.3d 220, 223 (3d Cir. 1997) ("Sections 1681n and 1681o of Title 15 respectively provide private rights of action for willful and negligent noncompliance with any duty

---

[6]    If this Court sees fit to dismiss Plaintiff's claim for lack of standing, dismissal should be without prejudice to Plaintiff's right to bring his claims in state court.

imposed by the FCRA and allow recovery for actual damages and attorneys' fees and costs, as well as punitive damages in the case of willful noncompliance." (internal quotation and citation omitted).).

Since 1997, the Act has specifically imposed requirements on users of reports, and the violation of those requirements gives rise to a private right of action for the consumer against the user.  See 15 U.S.C. § 1681b(f) ("A person shall not use or obtain a consumer report for any purpose unless [in accordance with the Act]"); Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 34 (3d Cir. 2011) ("The FCRA imposes civil liability upon a person who willfully obtains a consumer report for a purpose that is not authorized by the FCRA."); Zieger v. J.A. Cambece Law Office, P.C., CIV. 14-2965 RBK/JS, 2015 WL 3647267, at *3 (D.N.J. June 12, 2015) ("The FCRA imposes civil liability upon a person who willfully obtains a consumer report for a purpose that is not authorized by the FCRA . . . and a person who obtains a consumer report under false pretenses or knowingly without a permissible purpose."); Hernandez v. Lamboy Furniture, Inc., CIV.A.07-00240, 2008 WL 4061344, at *8 (E.D. Pa. Sept. 2, 2008) (Stating that Section 1681n provides for civil liability for violations of Section 1681b); Hinton v. Trans Union L.L.C., 2004 WL 1114744 (N.D. Ill. May 4, 2004) (lender and furnisher of information that accessed individual's consumer report after loan was paid in full can be liable for obtaining individual's consumer report without permissible purpose).

The Act also imposes liability on all users who obtain information under false pretenses. See 15 U.S.C. § 1681q.  While Section 1681q specifically mentions criminal liability, it is almost universally held to create a requirement under the Act, the violation of which is civilly enforceable against "any person" including corporate entities. 15 U.S.C. § 1681q; Daley v. Haddonfield Lumber Inc., 943 F.Supp. 464, 467 (D.N.J. 1996) ("[S]ection 1681q provides the basis for

imputing to users of consumer reports civil liability for willful violations of section 1681."); Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F.Supp.2d 340, 353 (E.D.N.Y. 2010) ("private right of action is available under 15 U.S.C. § 1681q, the provision plaintiffs rely on"); Kennedy v. Border City Sav. & Loan Ass'n, 747 F.2d 367, 369 (6th Cir. 1984) ("a civil cause of action under Section 1681n exists for violation of Section 1681q."); Gilliard v. Athena Funding Group, Inc., 2011 WL 4711956 (M.D. Fla. Oct. 5, 2011) (allegations that defendants initiated a "hard pull" without a permissible purpose stated a claim that defendants obtained report under false pretenses and with the knowledge that their action was in violation of the FCRA).

Moreover, the FCRA specifically enumerates when a private right of action under the Act is not permitted. See 15 U.S.C. 1681m(h)(8). Neither 1681q or 1681b have such a limitation, and thus a private right of action is further confirmed. See Milbourne v. JRK Residential Am., LLC, 92 F.Supp.3d 425, 434 (E.D. Va. 2015) (holding that because Section 1681b does not have a specific provision that prevents a private right of action, as in Section 1681m, then there is a private right of action to enforce Section 1681b).

Defendant also incorrectly argues that Plaintiff's citation to Section 1681n(a)(1)(A) is incorrect, and that Plaintiff should be proceeding under Section 1681n(a)(1)(B). (Def.'s Brief p. 10). This assertion is false, and completely misstates Plaintiff's allegations. Section 1681n(a)(1)(A) and (2)(B) are two different damages provisions for violating Section 1681q. Those damages provisions state:

> (a) In general. **Any person** who willfully fails to comply with any requirement imposed **under this title** with respect to any consumer is liable to that consumer in an amount equal to the sum of

> (1)    (A) any actual damages sustained by the consumer as a result of the failure or damages of *not less than $100 and not more than $1,000*; or

16

> (B) in the case of liability of a **natural person** for obtaining
> a consumer report under false pretenses or knowingly
> without a permissible purpose, actual damages sustained by
> the consumer as a result of the failure *or $1,000*, whichever
> is greater;

(emphasis added.)

Section 1681n(a)(1)(A) is intended for any "person" (such as T-Mobile) who violates any provision of the FCRA, including Section 1681q, while Subsection (2)(B) is meant for only "natural persons" who violate the FCRA.  Thus, Defendant's assertion that Section 1681n(a)(1)(B) is the applicable damages provision in this case is false.  See Daley, 943 F.Supp. at 467 (holding Haddonfield Lumber Inc., had violated 1681n and 1681q by obtaining the plaintiff's credit report under false pretenses); Massachusetts Mut. v. Orenyo, CIV. 96-5234 (WGB), 1998 WL 1297799, at *12 (D.N.J. July 24, 1998) ("[I]f Mass Mutual willfully obtained the credit report under false pretenses or for an improper purpose, it may be civilly liable to Orenyo under the FCRA.");  Davis v. Reg'l Acceptance Corp., 300 F.Supp.2d 377, 386 (E.D. Va. 2002) ("Because Plaintiff alleges that Hall [Acura of Newport News] unlawfully repossessed a vehicle that was lawfully titled in her name after having unlawfully obtained her credit report . . . she has adequately alleged willfulness and false pretenses under the designated sections of the Act.");  Gomeringer v. Pack, CIV.A. 6:15-1048-TMC, 2015 WL 5158742, at *3 (D.S.C. Sept. 2, 2015) ("The FCRA imposes civil liability on any 'person,' which includes any individual, corporation, or other entity, who willfully or negligently fails to comply with any requirement imposed under the FCRA. When a defendant acted willfully in violating the statute's requirements by obtaining a consumer report under false pretenses or knowingly without a permissible purpose, the FCRA permits a plaintiff to recover actual damages or statutory damages of $1,000, whichever is greater; punitive damages; and costs of the action." (internal citations omitted)).  Defendant's argument

taken to its logical conclusion would result in there being no private right of action under the FCRA against corporations, because Section 1681n(a)(1)(B) is a general damages provision that applies to any violation of the Act.

Defendant cites several cases to support its position, but none of those cases stand for the proposition that T-Mobile's would like.  In Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F. Supp. 2d 340, 354 (E.D.N.Y. 2010) that court determined "a private plaintiff may bring a claim under § 1681q through 1681n, the FCRA's enforcement provision for willful noncompliance with the statute", and at no point  was a determination made that a plaintiff must bring the cause of action under 1681n(a)(1)(B).  Defendant also cites Burghy v. Dayton Racquet Club, Inc., 695 F. Supp. 2d 689 (S.D. Ohio 2010) and Frazier v. Vintage Stock, Inc., No. CIV-15-550-D, 2016 WL 6952316, at *5 (W.D. Okla. Nov. 28, 2016) for the proposition that corporate entities cannot be held liable for obtaining a consumer report under false pretenses or without a permissible purpose.  These cases, however, only refer to a defendant's potential liability under 15 U.S.C. 1681n(a)(1)(B), which certainly only refers to natural persons.  As Plaintiff has addressed, the majority of courts, including this District, have held that a violation of Sections 1681b and 1681q can give rise to liability for corporations under Section 1681n.  See, e.g., Massachusetts Mut. v. Orenyo, CIV. 96-5234 (WGB), 1998 WL 1297799, at *12 (D.N.J. July 24, 1998) ("[I]f Mass Mutual willfully obtained the credit report under false pretenses or for an improper purpose, it may be civilly liable to Orenyo under the FCRA.").

A plain reading of provisions 1681n(a)(1)(A) and 1681n(a)(1)(B) confirms that there is both corporate and individual liability for violating 1681q.  Indeed, there would be no other reason to provide two different damage provisions for "any person" (1681n(a)(1)(A)) versus "natural persons" (1681n(a)(1)(B)).  See Schroeder v. Capitol Indemnity Corp., 2006 WL 2009053 (E.D.

Wis. July 17, 2006) ("Since Capitol Indemnity is not a 'natural person,' § 1681n(a)(1)(B) would presumably not apply. But under § 1681n(a)(1)(A), a plaintiff can recover from 'any person' who willfully fails to comply with the FCRA 'any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000,' as well as costs and reasonable attorneys fees. Thus, it would appear that if plaintiffs can establish that Capitol Indemnity willfully violated the FCRA by obtaining their credit reports without either their consent or a permissible purpose, they may be entitled to statutory damages.").

### ii.     Defendant Had No Permissible Purpose to Access Plaintiff's Credit Report

Plaintiff has alleged sufficient facts to state a claim under both 15 U.S.C. §§ 1681q and 1681b.  As a matter of law, an allegation under § 1681q cannot be sustained without the defendant also being in violation of § 1681b.  See Daley, 943 F.Supp. at 467.  To make a claim under § 1681q, Plaintiff must demonstrate that Defendant had no permissible purpose for obtaining Plaintiff's consumer report under § 1681b.  Section 1681b enumerates several permissible purposes under which a defendant could obtain a credit report.  One such purpose is that the user of the credit report obtained the report for a "legitimate business need" and "in connection with a business transaction that is initiated by the consumer." 15 U.S.C. § 1681b(a)(3)(F).  Another permissible purpose is that the user "intends to use the information in connection with a credit transaction involving the consumer . . . and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).  Because Defendant can claim no permissible purpose in this case, T-Mobile was required to obtain consent *in writing* from Plaintiff to access his credit report. 15 U.S.C. § 1681b(a)(2).

First, Defendant did not have a permissible purpose under § 1681b(a)(3)(F) because Plaintiff did not initiate a business transaction with T-Mobile.  Plaintiff was merely inquiring about

19

potential cellular phone service in contemplation of a possible future transaction.  In other words, Plaintiff was merely "window shopping".  The Federal Trade Commission ("FTC") has explained that mere questions of pricing or window shopping are not considered "business transaction."  The FTC illustrated this determination by explaining a circumstance where a consumer "'comes to an automobile dealership and requests information' from a salesman about one or more automobiles" did not constitute a transaction sufficient to allow the dealership to obtain a consumer's credit report.  FTC Letter  to Coffey (Feb. 11, 1998) (attached as Exhibit "A" to the Second Amended Complaint attached hereto as Exhibit "1").   As the FTC's Letter to Coffey confirms, more than a mere inquiry, or "shopping" behavior is required for a transaction to have been initiated:

A consumer who asks a dealer questions about prices and financing is not necessarily indicating an intent to purchase or lease a vehicle from that particular dealer. Nor does the dealer have a "legitimate" business need for a consumer report in this situation. The consumer may simply be comparison shopping. In such a situation, the dealer must obtain written permission from the consumer before obtaining a consumer report. *If the dealer would like to see a consumer's credit report before answering general questions about the availability of financing, this must be explained to the consumer <u>and written permission must be obtained.</u>* In the same way, a request to "test drive" a vehicle does not indicate an intent to initiate the purchase or lease of the vehicle. Accordingly, if a consumer asks to test drive a vehicle, the dealer must obtain written permission from the consumer before obtaining a report. <u>Id</u>. (emphasis added).

The "request for general information about products and prices offered does not involve a business transaction initiated by the consumer."  <u>Id</u>.  Instead, the FTC opined that a user "may obtain a [consumer] report only in those circumstances in which the consumer clearly understands that he or she is initiating the purchase or lease of a vehicle and the seller has a legitimate business

need for the consumer report information in order to complete the transaction," and that "*[o]nly in those circumstances where it is clear both to the consumer and to the dealer that the consumer is actually initiating the purchase or, lease of a specific vehicle and, in addition, the dealer has a legitimate business need for consumer report information may the dealer obtain a report without written permission*." Id. (emphasis added).

The illustration in the FTC Letter is nearly identical to this case. Plaintiff was clearly window shopping when he inquired about the cost of cellular phone plans. Plaintiff was provided that information by a T-Mobile representative, and decided not to agree to any services. Simply put, there was no transaction. This interaction was simply "shopping" by Plaintiff, and no permissible purpose existed under 1681b(a)(3)(F) to obtain Plaintiff's credit report.

Defendant also argues that it was permitted to obtain Plaintiff's credit report because there is an alleged transaction involving an extension of credit to the Plaintiff. 15 U.S.C. § 1681b(a)(3)(A). However, that is not the case, and Section 1681b(a)(3)(A) does not apply. Section 1681b(a)(3)(A) requires there to be a ***credit transaction*** involving the consumer, which did not occur in this case. 15 U.S.C. § 1681b(a)(3)(A); see also Stergiopoulos & Ivelisse Castro v. First Midwest Bancorp, Inc., 427 F.3d 1043, 1047 (7th Cir. 2005) ("A third party cannot troll for reports, nor can it request a report on a whim. Rather, there must be a direct link between a consumer's search for credit and the bank's credit report request."). Credit is defined in the FCRA as to have the same meaning as in § 1691a of the Equal Credit Opportunity Act ("ECOA"). 15 U.S.C. § 1681a(r)(5). Under the ECOA, credit is defined as "the right granted by a *creditor to a debtor* to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d) (emphasis added). Additionally, while the term "transaction" is not specifically defined in the FCRA, there are two definitions provided for

the word in Merriam Webster's Dictionary: (1) "something transacted; especially an exchange or transfer of goods, services, or funds"; and (2) "an act, process, or instance of transacting," with "transacting" and "transacted" both being relevantly defined as "**to carry to completion**." MERRIAM-WEBSTER'S DICTIONARY (11th ed. 2011) (emphasis added).

Indeed, under § 1681b(a)(3)(A) T-Mobile still had no permissible purpose to obtain Plaintiff's credit report, because Plaintiff, at no point, agreed to any type of transaction. and only requested T-Mobile plan pricing. This fact is most pointedly demonstrated by the fact that *Plaintiff did not obtain services, make any purchase or sign any agreement with T-Mobile*.

Furthermore, the vast majority of case law in the Third Circuit regarding § 1681b(a)(3)(A) reflects two instances where a creditor may have a permissible purpose that falls under this section: (1) where a consumer applies for credit; and (2) when a consumer owes a debt that is being collected by the creditor. See, e.g, Huertas v. Citigroup, Inc., 639 Fed.Appx. 798, 801 (3d Cir. 2016) (holding that a consumer applying for credit, even if the creditor initiated the transaction, qualifies as a permissible purpose under § 1681b(a)(3)(A)); Cooper v. Pressler & Pressler, LLP, 912 F.Supp.2d 178, 187 (D.N.J. 2012) (holding that there was a permissible purpose because Plaintiff sought and obtained credit from the defendant); Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 34 (3d Cir. 2011) (holding that debt collectors have a permissible purpose under § 1681b(a)(3)(A)). Here, neither of these scenarios exist. As set forth above, Defendant had no permissible purpose to obtain Plaintiff's full credit report through a "hard" inquiry, and violated 15 U.S.C. § 1681b.

Moreover, T-Mobile cannot claim after the fact that it has several permissible purposes to obtain Plaintiff's credit report when it was required to certify the basis for its permissible purpose

under the FCRA at the time it acquired Plaintiff's credit report.  Indeed, Section 1681b(f) expressly states:

> (f) Certain use or obtaining of information prohibited. A person shall not use or obtain a consumer report for any purpose unless
>
> > (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
> >
> > (2) the purpose is certified in accordance with section 607 [§ 1681e] by a prospective user of the report through a general or specific certification.

Thus, T-Mobile has already certified the exact reason that it claims to have been permitted to obtain Mr. Boone's consumer report.  Whatever the purported basis was at the time the credit report was acquired, should be the only basis upon which T-Mobile is permitted to argue that it was entitled to Mr. Boone's consumer report.

Because there was no permissible purpose to obtain Plaintiff's credit information in this case, Plaintiff's claim under § 1681q is also actionable.  The second inquiry in a § 1681q analysis is if Defendants actions were calculated to mislead Plaintiff.  Daley v. Haddonfield Lumber Inc., 943 F.Supp. 464, 467 - 486 (D.N.J. 1996).  Here, T-Mobile affirmatively represented to Plaintiff that it would only perform a soft credit inquiry which would not affect Plaintiff's credit score. (Compl. ¶ 15).  However, instead of following through with that promise, T-Mobile performed a hard credit inquiry without authority and obtained a full consumer report. (Compl. ¶ 17).  T-Mobile had direct knowledge of Plaintiff's desires to keep his personal information private; however, Defendant made the affirmative choice to mislead Plaintiff about T-Mobile's intentions and accessed his full credit file against Plaintiff's will.  The representation that T-Mobile would not conduct a hard credit inquiry and access Plaintiff's full credit file was directly intended to deceive Plaintiff for T-Mobile's own gain.  There is no other way to construe such a direct and blatant misrepresentation other than that it was calculated to mislead.  Moreover, the Complaint not only

23

specifies the facts necessary to show a calculated attempt to mislead, it specifically alleges that T-Mobile obtained "a consumer report under false pretenses by intentionally misleading Plaintiff." (Compl. ¶ 41).

### iii.    Plaintiff's Claims Under the NJ FCRA Have Been Adequately Plead

T-Mobile claims that Plaintiff's NJ FCRA claim fails because Section 56:11-38(a)(1)(b) only refers to natural persons. (Def.'s Brief p. 13). Defendant, however, cites the wrong NJ FCRA section to support its arguments for dismissal. Indeed, Plaintiff brings his NJ FCRA claims pursuant to N.J.S.A. 56:11-31, prohibiting the access of a consumer report without a permissible purpose, and N.J.S.A. 56:11-40 (*and not* 56:11-38(a)(1)(b)), prohibiting "any person" from "knowingly and willfully obtain[ing] information on a consumer from a consumer reporting agency under false pretenses." "Any person" as used in the NJ FCRA, like the FCRA, may refer to corporations as well as natural persons. Furthermore, the NJ FCRA, like the FCRA, provides for damages for a violation of N.J.S.A. 56:11-40 and N.J.S.A. 56:11-31 "$100 and not more than $1,000." 56:11-38a(1)(a).

Further, the NJ FCRA has the same permissible purposes as the FCRA in allowing people to access a consumer's credit report. N.J.S.A. 56:11-31. Thus, as discussed in detail above, the same reasons under the FCRA that T-Mobile did not have a permissible purpose in obtaining Plaintiff's credit report under the FCRA, so too did T-Mobile lack any permissible purpose under the NJ FCRA. Thus, Plaintiff plainly states a claim for Defendant's improper acquisition of Plaintiff's credit report and under false pretenses.

Accordingly, as Plaintiff has standing to bring his claims, and has appropriately plead causes of action for which relief can be granted, Defendant's Motion to Dismiss the Second Amended Complaint should be Denied in its entirety.

**PLAINTIFF'S CROSS-MOTION TO AMEND**
**THE THIRD AMENDED COMPLAINT**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiff respectfully moves this Court for leave to file a Third Amended Complaint. The Third Amended Complaint (attached hereto as Exhibit "1") clarifies Plaintiff's claims against T-Mobile USA, Inc. by, among other things, adding two proposed putative classes to the Complaint, the basis for which already exist in the Second Amended Complaint.

As noted above, the new language in the Complaint simply relates to two additional putative classes, clarifying claims already asserted in Plaintiff's current Complaint. Plaintiff's current Complaint provides only a single class for T-Mobile violating both 1681q and 1681b, and a single New Jersey class for violations of both N.J.S.A. 56:11-31a and N.J.S.A. 56:11-40. However, there should be four different classes representing violations of each of the sections noted under the FCRA and NJ FCRA. Although Defendant is certain to make much of Plaintiff's requested amendment, Plaintiff had requested that counsel for Defendant agree to a potential amendment long ago and prior to the filing of the Second Amended Complaint. Defendant refused Plaintiff's request for any further changes. Accordingly, Plaintiff seeks leave to amend pursuant to FRCP 15(a), which should be granted for the reasons set forth below.

**A. PLAINTIFF HAS MET THE STANDARD FOR OBTAINING LEAVE TO FILE AN AMENDED COMPLAINT UNDER RULE 15**

A motion to amend a complaint filed prior to the deadline for amendments of pleadings set in the Rule 16 Scheduling Order are governed by Fed.R.Civ.P. 15(a). Pursuant to Rule 15(a), after a responsive pleading has been filed: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The Third Circuit has held that "[i]n evaluating challenges to the denial of opportunity to amend we have held consistently that leave to amend should be granted freely. This approach

25

ensures that a particular claim will be decided on the **merits** rather than on technicalities." <u>Dole</u> <u>v. Arco Chem. Co.</u>, 921 F.2d 484, 486 (3d Cir. 1990) (citations omitted) (emphasis added). However, "[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir.1997). In this case, no grounds exist justifying a denial of Plaintiff's motion to amend. Therefore, the motion should be granted.

### i.   <u>Defendant is Not Prejudiced by Plaintiff's Motion</u>

In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment." <u>Bechtel v. Robinson</u>, 886 F.2d 644, 652 (3d Cir.1989) (quoting <u>Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n</u>, 573 F.2d 820, 823 (3d Cir. 1978)). To establish prejudice, the non-moving party must make a showing that "allowing an amendment would result in additional discovery, cost, and preparation to defend against *new* facts or new theories." <u>Cureton v. Nat'l Collegiate Athletic Ass'n</u>, 252 F.3d 267, 273 (3d Cir. 2001).

Here, Defendant will not suffer any undue prejudice by virtue of the Court's allowance of the proposed amendment. The proposed amendment does not change any facts or allegations nor does it espouse new theories of liability, it simply clarifies two additional putative classes that flow from the alleged violations already asserted against Defendant in the current Second Amended Complaint. There is no discovery that will need to be repeated. The Court has stayed discovery pending the outcome of Defendant's Motion. Furthermore, there has been no undue delay in filing

the amendment[7], and there will be no further cost or preparation for T-Mobile to defend against Plaintiff's claims as they are the same as that of the Second Amended Complaint.

Defendant will likely argue that they are prejudiced by having to file another attack on a proposed amendment.  Defendant's response to the instant motion will permit it the opportunity to assert the futility of the proposed amendment, which is the same standard for a motion to dismiss. Markert v. PNC Fin. Servs. Grp., Inc., 828 F. Supp. 2d 765, 771 (E.D. Pa. 2011).  There will be no need for a motion to dismiss after the Court grants leave to amend. Moreover, expending additional time and resources to respond to an amended complaint is not appropriate to show prejudice to deny a motion to amend.  Young v. St. Luke's Hosp., 09-CV-03460, 2010 WL 1348468, at *4 (E.D. Pa. Mar. 30, 2010) ("Defendant contends it would be prejudiced if I grant plaintiff leave to file her Second Amended Complaint because defendant would have to 'expend time and financial resources repeatedly defending frivolous claims.' This is not what is meant by prejudice in this context. Under defendant's view of prejudice, *any* amendment to a defective complaint would be barred because the defendant would be forced to spend time and money defending the action."); see also Calzaturificio Rangoni, S.A. v. U.S. Shoe Corp., 92 CIV. 2020 (JFK), 1993 WL 485753, at *2 (S.D.N.Y. Nov. 23, 1993) ("Here Rangoni has not alleged bad faith, and the only prejudice it asserts is the need to litigate the newly-asserted defense. This is not

---

[7]      If Defendant contends that there has been a delay, it should be noted that delay alone does not justify denying a motion to amend.  See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).  Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate.  Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984).  Delay is generally found when a plaintiff seeks leave to amend many months after the filing of the complaint and deep into the litigation, and not, as in this case, where it is early in litigation. Therefore, there is plainly no undue delay in this case that would prevent this Court from granting leave to amend.

a legitimate objection, since it would eliminate the possibility of all substantive amendment of pleadings.").   Therefore, Defendant cannot show that it would be prejudiced by Plaintiff's proposed Third Amended Complaint and leave to amend should be granted.

### ii. Plaintiff's Request to File the Third Amended Complaint is Not Futile and Should be Allowed

"[L]eave to amend need not be granted when amending the complaint would *clearly* be futile*."*  Cowell v. Palmer Township, 263 F.3d 286, 296 (3d Cir.2001) (emphasis added).  An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient **on its face**."  Harrison Beverage Co. v. Dribeck Imp., Inc., 133 F.R.D. 463, 468 (D. N.J. 1990) (internal quotation marks and citations omitted) (emphasis added.).  To evaluate futility, the same standard of legal sufficiency is applied as is applied for a motion to dismiss.  Markert v. PNC Fin. Servs. Grp., Inc., 828 F. Supp. 2d 765, 771 (E.D. Pa. 2011).  In this case, Plaintiff's request to file an amended complaint is not futile as Plaintiff has standing to bring his claims and he has alleged sufficient facts to state a claim for relief that is facially plausible.

### a. Plaintiff Has Properly Plead Violations of §§ 1681b and 1681q of the FCRA and Has Standing to Bring His Claim

As Plaintiff has not changed any facts or law in his proposed Third Amended Complaint and simply adds two putative classes, Plaintiff has fully addressed any issues Defendant could have regarding the futility of Plaintiff's proposed amendment to the Complaint in his Opposition to Defendant's Motion to Dismiss, as set forth above.  To reiterate, Plaintiff has standing to bring his claim because he has plead well-established concrete injuries-in-fact – an invasion of privacy and damage to credit worthiness – each of which are sufficient alone to confer Article III standing.  See In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d at 641 (determining that "'unauthorized disclosure of information' have long been seen as injurious" and further holding that "[O]ur precedent and congressional action lead us to conclude that the improper disclosure of

28

one's personal data in violation of FCRA is a cognizable injury for Article III standing purposes.") (citation omitted); <u>Santangelo v. Comcast Corp.</u>, 162 F.Supp.3d 691, 698 (N.D. Ill. 2016) ("[A] depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing.").  Plaintiff has also demonstrated that Defendant is the cause of that injury. See <u>Constitution Party of Pennsylvania v. Aichele</u>, 757 F.3d 347, 366 (3d Cir. 2014) (Holding that if the connection between the conduct and the injury is traceable, "an indirect causal relationship will suffice."); <u>Massachusetts v. E.P.A.</u>, 549 U.S. 497, 524 (2007) (The Court held that causation is present even if there is only an incremental link between the challenged action and asserted injury.).

Furthermore, Plaintiff has properly plead violations of Sections 1681q and 1681b.  There is clearly a private right of action for violations of 1681q and 1681b pursuant to 1681n(a)(1)(A). See  <u>Daley v. Haddonfield Lumber Inc.</u>, 943 F.Supp. 464, 467 (D.N.J. 1996) ("[S]ection 1681q provides the basis for imputing to users of consumer reports civil liability for willful violations of section 1681."); <u>Zieger v. J.A. Cambece Law Office, P.C.</u>, CIV. 14-2965 RBK/JS, 2015 WL 3647267, at *3 (D.N.J. June 12, 2015) ("The FCRA imposes civil liability upon a person who willfully obtains a consumer report for a purpose that is not authorized by the FCRA . . . and a person who obtains a consumer report under false pretenses or knowingly without a permissible purpose.").  Furthermore, Defendant lacked a permissible purpose for obtaining Plaintiff's credit report.  Plaintiff was not seeking credit from Defendant and Plaintiff did not initiate a transaction with Defendant. <u>See</u> Plaintiff's Brief at Argument section B.ii above.  Furthermore, Defendant's actions were calculated to mislead because Defendant made the affirmative choice to deceive Plaintiff about T-Mobile's intentions and accessed his full credit file against Plaintiff's will.

Finally, as stated more fully above, Plaintiff has standing to bring his NJ FCRA claims for much the same reason that Plaintiff has standing to bring his FCRA claim.  Moreover, also as further stated above, Defendant adequately stated a claim under Sections 56:11-40 and 56:11-31 for which relief can be granted.

## **CONCLUSION**

Accordingly, in the interest of justice, this Court should deny Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint and grant Plaintiff's motion for leave to file the proposed Third Amended Complaint.

Respectfully submitted,

**THE KIM LAW FIRM, LLC**

BY: */s/ Richard H. Kim*
  Richard Kim, Esquire
  Drucilla Tigner, Esquire
  Attorney I.D. Nos.: 010412005/155772016
  1500 Market St.
  Centre Square – West Tower
  Suite W-3110
  Philadelphia, PA 19102
  Ph. 855-996-6342/Fax 855-235-5855
  rkim@thekimlawfirmllc.com
  dtigner@thekimlawfirmllc.com

  PROFY PROMISLOFF & CIARLANTO, P.C.
  JOSEPH M. PROFY (ID# 013941995)
  JEFFREY J. CIARLANTO (ID# 028762007)
  100 N. 22nd Street, Unit 105
  Philadelphia, PA 19103
  Tel: (215) 259-5156
  Fax: (215) 600-2642
  profy@prolawpa.com
  ciarlanto@prolawpa.com

  FERRARA LAW GROUP, P.C.
  Kevin J. Kotch, Esquire
  Attorney ID No. 050341993
  50 West State Street, Suite 1100

Trenton, NJ 08608
Ph. 609-57103742/Fax 609-498-7440
kevin@ferraralawgp.com

*Attorneys for Plaintiff Dean Boone*

Dated: August 23, 2017