DEAN BOONE, individually and on behalf of all others similarly situated,

        Plaintiff,

vs.

T-MOBILE USA INC.,

        Defendant.

Civ. No. 17-378-KM-MAH

OPINION

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Dean Boone ("Boone") alleges that defendant T-Mobile USA Inc. ("T-Mobile") obtained his credit report through a "hard" credit inquiry without his consent. He brings a class action on behalf of himself and all others similarly situated for purported violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and the New Jersey Fair Credit Reporting Act, N.J. Stat. Ann. 56:11-28, *et seq.* ("NJ FCRA"). T-Mobile seeks to dismiss Boone's second amended complaint. (ECF no. 33). Boone opposes this motion and seeks leave to submit a third amended complaint. (ECF no. 36). T-Mobile opposes Boone's motion to amend. (ECF no. 39).

## I. BACKGROUND[1]

### A. Factual History

Mr. Boone resides in Mahwah, New Jersey. (2AC ¶ 5). T-Mobile is a corporation that provides telephone and data services throughout the country. (2AC ¶ 6). Boone seeks to certify nationwide and New Jersey classes based on T-Mobile's purported violations of the FCRA and NJ FCRA.

On or about April 21, 2016, Boone went to a T-Mobile store in Paramus, New Jersey, and asked a T-Mobile employee about available cell phone plans and rates. (2AC ¶ 11). Boone made it clear that he did not want his credit report accessed if a "hard" credit inquiry would be required. (2AC ¶ 12). According to Boone, "hard" inquiries result in the disclosure of unauthorized personal information to T-Mobile and also lower the prospective customers' credit scores; "soft" inquiries, by contrast, involve less disclosure of information and do not affect credit scores. (2AC ¶ 21). The employee confirmed that T-Mobile would conduct a soft inquiry and not a hard inquiry. (2AC ¶ 15). Boone did not sign any agreement, did not agree to any services, and did not provide written consent for a hard inquiry. (2AC ¶¶ 16-17). Nonetheless, T-Mobile obtained his credit report through a hard credit inquiry. (2AC ¶ 17).

---

[1] All facts and inferences are made in favor of the nonmoving party on a motion to dismiss. Citations to the record are abbreviated as follows:

"2AC" = Second Amended Class Action Complaint (ECF no. 31)

"Def. Br." = Memorandum of Law in Support of Motion to Dismiss Second Amended Class Action Complaint (ECF no. 33-1)

"3AC" = Proposed Third Amended Class Action Complaint (ECF no. 36-1)

"Pl. Br." = Plaintiff Dean Boone's Brief in Opposition to Defendant T-Mobile's Motion to Dismiss and Brief in Support of Plaintiff's Cross-Motion to Amend (ECF no. 36-4)

"Def. Reply" = Reply Memorandum of Law in Support of Motion to Dismiss Second Amended Class Action Complaint and Opposition to Plaintiff's Cross-Motion to Amend (ECF no. 39)

T-Mobile has "routinely and systematically" obtained such hard inquiries on prospective customers without a permissible purpose or written consent. (2AC ¶ 20). Those prospective customers form the putative classes.

### B. Putative Class Action

Boone seeks to represent classes of prospective T-Mobile customers who, like him, were allegedly subject to improper hard credit inquiries. In his second amended complaint, Boone defines two putative classes of putative customers for whom T-Mobile conducted hard inquiries on "false pretenses":

- **FCRA False Pretense Class:** All persons within the United States who had a hard credit inquiry performed on his or her credit by [T-Mobile] who had not previously authorized a hard inquiry within the five years prior to the filing of the Complaint until the date of final judgment in this action. (2AC ¶ 27).

- **NJ False Pretense Class:** All persons within New Jersey who had a hard credit inquiry performed on his or her credit by [T-Mobile] who had not previously authorized a hard inquiry within the five years prior to the filing of the Complaint until the date of final judgment in this action. (2AC ¶ 28).

In his proposed third amended complaint, Boone proposes two additional classes of prospective customers for whom T-Mobile sought hard inquiry credit reports for an "impermissible purpose":

- **FCRA Impermissible Purpose Class:** All persons within the United States who had a hard credit inquiry performed on his or her credit by [T-Mobile,] who had not authorized a hard inquiry, thereby obtaining a persons' credit report without any permissible purpose, within the five years prior to the filing of the Complaint until the date of final judgment in this action. (3AC ¶ 27).

- **NJ FCRA Impermissible Purpose Class:** All persons within New Jersey who had a hard credit inquiry performed on his or her credit by [T-Mobile], who had not authorized a hard inquiry, thereby obtaining a

3

persons' credit report without any permissible purpose, within the five years prior to the filing of the Complaint until the date of final judgment in this action. (3AC ¶ 29).[2]

As the titles suggest, any FCRA class would seek relief under the federal FCRA, while any NJ FCRA class would seek relief under the NJ FCRA. (2AC ¶¶ 38-51; 3AC ¶¶ 40-53).

### C. Procedural History

On January 19, 2017, Boone filed a complaint against T-Mobile in this Court. (ECF no. 1). T-Mobile moved to dismiss the complaint on February 27, 2017. (ECF no 10). On March 17, 2017, Boone filed an amended complaint. (ECF no. 13). T-Mobile moved to dismiss the amended complaint on April 14, 2017. (ECF no. 19).

On June 15, 2017, Boone and T-Mobile attended a scheduling conference before the Honorable Michael A. Hammer. (Pl. Br. 4). At the scheduling conference, T-Mobile consented to Boone's filing a second amended complaint. (Pl. Br. 4).

Boone filed that second amended complaint on June 28, 2017. (ECF no. 31). On July 26, 2017, T-Mobile filed this motion to dismiss the second amended complaint for failure to state a claim and for lack of standing. (ECF no. 33). On August 24, 2017, Boone sought leave to file a third amended complaint. (ECF no. 36). T-Mobile, which this time did not consent (Pl. Br. 4), opposes that motion. (ECF no. 39).

### II. LEGAL STANDARDS

#### A. 12(b)(1) Motion to Dismiss for Lack of Jurisdiction

Motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). "[B]ecause subject

---

[2]     The addition of these two putative classes is the only difference between Boone's second and third amended complaints. (Pl. Br. 26; Def. Reply 11; 2AC; 3AC).

matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977). A necessary corollary is that the court can raise sua sponte subject-matter jurisdiction concerns." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003).

Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. A court considering such a facial challenge assumes that the allegations in the complaint are true. *Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. It "review[s] only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Common Cause of Penn. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).

A factual attack, on the other hand, permits the Court to consider evidence extrinsic to the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Such a factual attack "does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

> The burden of establishing federal jurisdiction rests with the party asserting its existence. [citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).] "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." [citing *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).] A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of

5

[a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" [citing *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (alterations in original) (quoting *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir.2007)).]

"In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." [citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).] By contrast, in reviewing a factual attack, "the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence. If there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction." [citing *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006) (citations omitted).]

*Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (footnotes omitted; case citations in footnotes inserted in text).

Since T-Mobile does not challenge the validity of any of Boone's factual claims as part of its motion, it brings a facial challenge. It argues that the allegations in the operative version of the complaint, even accepted as true, are insufficient to establish Boone's Article III standing, an FCRA claim, or a NJ FCRA claim. In reviewing facial challenges to standing, Courts "apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *Id.*; *see In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632-33 (3d Cir. 2017); *Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006).

### B. 12(b)(6) Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels &*

*Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The United States Court of Appeals for the Third Circuit has explicated the *Twombly/Iqbal* standard on several occasions. *See, e.g., Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70-73 (3d Cir. 2011); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129-30 (3d Cir. 2010). In doing so, it has provided a three-step process for evaluating a Rule 12(b)(6) motion:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See [Iqbal,* 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

7

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also In re Asbestos Prods. Liability Litig. (No. VI)*, 822 F.3d 125, 134 & n.7 (3d Cir. 2016); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.").

## III.  DISCUSSION

T-Mobile argues that **(A)** Boone lacks Article III standing, **(B)** Boone fails to state a claim under the FCRA or the NJ FCRA, and **(C)** Boone's request to submit a third amended complaint should be denied.

### A. Article III Standing

"The Constitution confers limited authority on each branch of the Federal Government." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546 (2016). Under Article III, the federal courts are endowed with "[t]he judicial Power of the United States," which is limited to "Cases" and "Controversies." U.S. Const. art. III §§ 1, 2; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Courts ensure that Article III standing exists in order to maintain the proper separation of powers. *Lujan*, 504 U.S. at 559-60. In fact, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo*, 136 S. Ct. at 1547 (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

Standing "serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149,

154-55 (1990). While some of the elements of standing embody prudential considerations, "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560 (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

There are three elements of Article III standing: **(1)** First, a plaintiff must have an "injury in fact"—i.e., an "invasion of a legally protected interest" that is "concrete," "particularized," and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. **(2)** Second, a plaintiff must show a "causal connection between the injury and the conduct complained of" such that the injury is "fairly trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Id.* (citations omitted). **(3)** Third, there must be a likelihood "that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citation omitted). These requirements are known as injury in fact, causation, and redressability.

"The requirements for standing do not change in the class action context." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017). The named plaintiff must allege and show Article III standing in order to maintain a putative class action. *Id.* "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *see Horizon*, 846 F.3d at 634. However, the named plaintiff does not have to show that unidentified members of the putative class members have suffered an injury in order to proceed. *See Horizon*, 846 F.3d at 634; *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996); *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

### 1.    Injury-in-fact Requirement

To show an injury in fact, a plaintiff must allege an "invasion of a legally protected interest" that is **(a)** "concrete," **(b)** "particularized,"[3] and **(c)** "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. I will address these elements separately.

### (a) Concrete

For the following reasons, I conclude that Boone's injury as alleged is concrete.

For an injury to be "concrete," it must be "'*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (citing Black's Law Dictionary 479 (9th ed. 2009)). It must be "real," but does not necessarily need to be "tangible." *Id.* at 1548-49; *see, e.g., Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise).

*Spokeo* holds that a plaintiff cannot satisfy Article III standing's injury-in-fact requirement "by alleging a bare procedural violation." 136 S. Ct. at 1550. For instance, the dissemination of an incorrect zip code, without more, is not a concrete harm. *Id.* An FCRA plaintiff must show that "the particular procedural violations alleged ... entail a degree of risk sufficient to meet the concreteness requirement." *Id. Spokeo* remanded the case to the Ninth Circuit without delineating the precise boundaries of Article III standing with regard to the FCRA.[4]

---

[3]    *Spokeo* explained that the "concrete and particularized" analysis involves two separate inquiries. *Spokeo*, 136 S. Ct. at 1548. Prior to this, "concrete and particularized" were generally discussed together. *See, e.g., Lujan*, 504 U.S. at 561, 563-67. Given the Court's language in *Spokeo*, I will discuss concreteness and particularization separately. I therefore divide the injury-in-fact analysis not into two parts but three: concreteness, particularization, and actual or imminent harm.

[4]    The Supreme Court remanded the case because "the Ninth Circuit failed to fully appreciate the distinction between concreteness and particularization." 136 S. Ct. at 1550. The Court did not take a position on whether the plaintiff adequately alleged an injury in fact. *Id.*

Boone posits that T-Mobile's behavior caused two injuries that meet the concreteness requirement: **(i)** T-Mobile, by conducting a hard credit inquiry, caused the unauthorized disclosure of his personal information; and **(ii)** T-Mobile's hard credit inquiry negatively impacted his credit score.

**(i)** The unauthorized disclosure of personal information satisfies the injury-in-fact's concreteness requirement. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638-41 (3d Cir. 2017). Privacy violations can give rise to standing. In *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, plaintiff internet users sued advertising providers, alleging that their placement of "cookies" (i.e., small files with identifying information left by a web server on users' browsers) violated a number of state and federal statutes, including the Stored Communications Act ("SCA"). 806 F.3d 125, 133 (3d Cir. 2005). The Third Circuit found that plaintiffs, although they had not suffered an economic loss, had standing. So long as an injury "affect[s] the plaintiff in a personal and individual way," the plaintiff need not "suffer any particular type of harm to have standing" or "show actual monetary loss." *Id.* (internal quotation marks and citation omitted). Instead, "the actual or threatened injury required by Art[icle] III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id.* (internal quotation marks and citation omitted).

*In re Nickelodeon Consumer Privacy Litigation* reaffirmed *Google*'s holding. In that case, plaintiffs alleged that Viacom and Google unlawfully collected plaintiffs' personal information on the internet, including the identification of webpages they visited and videos they watched. 827 F.3d 262, 267 (3d Cir. 2016). The Third Circuit found that plaintiffs had standing. *Id.* "[W]hen it comes to laws that protect privacy, a focus on economic loss is misplaced." *Id.* at 272-73 (internal quotation marks omitted). Rather, "the unlawful disclosure of legally protected information" constitutes "a clear *de facto* injury." *Id.* at 274. The Court noted, "Congress has long provided plaintiffs with the right to seek

redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private." *Id.*

Defendants argue that the Supreme Court's *Spokeo* decision dramatically altered the doctrine of standing in such circumstances. The Third Circuit, speaking post-*Spokeo*, disagrees: "[W]e do not believe that the [*Spokeo*] Court so intended to change the traditional standard for the establishment of standing. As we noted in *Nickelodeon*, '[t]he Supreme Court's recent decision in *Spokeo* ... does not alter our prior analysis in *Google*." *See Horizon*, 846 F.3d at 637-38 (citing *Nickelodeon*, 827 F.3d at 273).

*Spokeo* does, however, erect certain guideposts. First, "intangible injuries can ... be concrete." *Spokeo*, 136 S. Ct. at 1549 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)). To determine if an injury, though intangible, is nevertheless concrete, it is instructive to "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* (citing *Vermont Agency of Nat'l Res. v. United States ex rel. Stevens*, 529 U.S. 765, 775-77 (2000)). Nonetheless, even if a cause of action did not exist at common law, "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* (citing *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)).

Second, a plaintiff does not necessarily satisfy the injury-in-fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* For instance, "a bare procedural violation, divorced from any concrete harm," does not satisfy the Article III injury-in-fact requirement. *Id.*; *see Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing. Only a person who

12

has been accorded a procedural right to protect his *concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy." (internal quotation marks omitted)); *see also Lujan*, 504 U.S. at 572.

Third, a "risk of real harm" can satisfy the concreteness requirement. *Spokeo*, 136 S. Ct. at 1549. For example, victims of slander and libel have long been permitted recovery even through their harms are often difficult to prove or measure. *Id.* (citing Restatement (First) of Torts, §§ 569, 570). Congress can also identify certain procedural rights that constitute an injury in fact. In *Federal Election Commission v. Akins*, a group of voters' "inability to obtain information" that Congress had decided to make public qualified as an injury in fact. 542 U.S. 11, 20-25 (1998). In *Public Citizen v. Department of Justice*, two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitute[d] a sufficiently distinct injury to provide standing to sue." 491 U.S. 440, 449 (1989); *see also Spokeo*, 136 S. Ct. at 1549-50.

In sum, *Spokeo* clarifies that "Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk." 136 S. Ct. at 1550. *Spokeo* does not wholly revamp the injury-in-fact requirement by any means. *Horizon*, 846 F.3d at 648. Congress still "has the power to define injuries ... that were previously inadequate at law." *Id.* (citing *Spokeo*, 136 S. Ct. at 1549 (internal quotation marks and citations omitted). However, a "bare procedural violation," such as disseminating an incorrect zip code (without any other harm), does not satisfy injury-in-fact's concreteness requirement. *Spokeo*, 136 S. Ct. at 1550 & n.8. Congress can proscribe intangible harms, but it does not follow that a plaintiff "automatically" satisfies the injury-in-fact requirement because of a statutory right to sue. *Horizon*, 846 F.3d at 638 (citing *Spokeo*, 136 S. Ct. at 1549).

In *Horizon*, the Third Circuit affirmed that "'unauthorized *disclosures* of information' have long been seen as injurious." *Id.* (citing *Nickelodeon*, 827 F.3d

at 274). The unauthorized disclosure of information does not precisely correspond to a common law tort, but it is analogous to certain privacy torts have that traditionally provided a basis for suit in English or American courts. *Id.* at 638-40. The FCRA elevates this harm to a statutory right and establishes that "the unauthorized dissemination of personal information by a credit reporting agency causes an injury in and of itself—whether or not the disclosure of that information increased the risk of identity theft or some other future harm." *Id.* at 639. Accordingly, the Third Circuit found that the unauthorized dissemination of the *Horizon* plaintiffs' information constituted a concrete harm. *Id.* at 640.

In this case, Boone alleges a similar concrete harm—i.e., the unauthorized dissemination of personal information. A hard credit inquiry "contains substantially more information (that is confidential and personal) than a 'soft' inquiry." (2AC ¶ 13); *see* 15 U.S.C. § 1681b(c); *Vanaman v. Nationstar Mortg., LLC,* No. 15-cv-906, 2017 WL 1097189, at *1 (D. Nev. Mar. 22, 2017) ("A soft pull does not provide individual account or tradeline information found on a full consumer report obtained for a 'hard pull' for the extension of credit."); *Cooper v. Pressler & Pressler, LLP,* 912 F. Supp. 2d 178, 187 n.10 (D.N.J. 2012) ("[A] soft pull [is] a request for updated address information only." (internal quotation marks and citation omitted)). Boone alleges that he did not provide consent for T-Mobile to obtain a hard credit inquiry and that T-Mobile had no permissible purpose to obtain his credit report. (2AC ¶¶ 12-18); *see* 15 U.S.C. § 1681b(a)(2)–(3). Thus, T-Mobile allegedly caused the unauthorized dissemination of Boone's personal information.

T-Mobile argues that Boone's case is distinguishable from *Horizon*. (Def. Br. 7 n.2). The *Horizon* plaintiffs' information, it says, fell into the hands of thieves as a result of inadequate protections, while Boone's information was obtained pursuant to Boone's own "consent to conduct an inquiry of his credit." (Def. Br. 7 n.2). This argument is unavailing. First, the outcome of

14

*Horizon* case did not turn on how or to whom the information was subsequently disseminated. The harm was that plaintiffs' personal information was negligently made available to outsiders without plaintiffs' consent. *See Horizon*, 846 F.3d at 639-40. Second, although T-Mobile had Boone's consent, that consent was allegedly limited to a soft credit inquiry. For a hard credit inquiry, written consent or a permissible purpose would have been required. 15 U.S.C. § 1681b(a)(2)–(3); *see Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 433-35 (M.D. Pa. 2004). Moreover, Boone specifically told T-Mobile he did not want them to conduct a hard credit check. (2AC ¶¶ 12-17).

In the circumstances as alleged, the unauthorized disclosure of personal information constitutes a concrete injury within the meaning of *Spokeo* and *Horizon*.

**(ii)** The alleged negative impact on Boone's credit score is also a concrete injury. First, it is important to not conflate issues: whether an allegation satisfies the concreteness requirement of the injury-in-fact requirement is separate from whether that allegation states plausible damages.[5] *See Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which [the plaintiff] could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction."); *see also Davis v. Wells Fargo*, 824 F.3d 333, 349-50 (3d Cir. 2016). I will discuss the issue of damages in relation to Boone's credit score in subsection III.B.1(e).

Boone alleges that each hard credit inquiry decreases a credit score. (2AC ¶ 13). Several courts have found that a depleted credit score constitutes

---

[5]     T-Mobile cites *Slack v. Suburban Propane Partners, L.P.* for the proposition that a damaged credit score is not a concrete injury for purposes of Article III standing. (Def. Br. 7). *Slack* concerns a motion to dismiss. No. 10-2548, 2010 WL 3810870 (D.N.J. Sept. 21, 2010). *Slack* found that that a damaged credit score, on its own, does not constitute "actual damages" for purposes of a motion to dismiss. *Id.* This is not relevant to the Article III standing analysis.

an injury in fact. The Northern District of Illinois elaborated in *Santangelo v. Comcast Corp.*:

> Credit scores are of great importance in our economy, and a depleted credit score could affect a consumer in numerous ways, inflicting harm that often may be difficult to prove or quantify. Congress has the power to discourage the needless depletion of consumers' credit scores even when the depleted score cannot be neatly tied to a financial harm. While discovery may well show that [plaintiff] did not suffer any actual damages as a result of his lower credit score, at this preliminary stage, his allegations are sufficient to establish Article III injury-in-fact.

162 F. Supp. 3d 691, 698 (N.D. Ill. 2016). *Adams v. Fifth Third Bank* also held that a decreased credit score is an injury-in-fact. No. 3:16-cv-218, 2017 WL 561336, at *3 (W.D. Ky. Feb. 10, 2017). Harm to one's credit score might make it more difficult or more expensive to obtain credit cards, auto loans, and mortgages. *Id.*; *see also Green v. RentGrow, Inc.*, No. 2:16-cv-421, 2016 WL 7018564 (E.D. Va. Nov. 10, 2016) (report and recommendation of magistrate judge), *adopted by* 2016 WL 7031287 (Nov. 30, 2016); *cf. Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 590-91 (7th Cir. 2016) (holding that plaintiffs' allegations, including a damaged credit score and the denial of credit, constituted an injury in fact).

*Spokeo* provides that a "bare procedural violation" of the FCRA does not satisfy the injury-in-fact requirement. However, a depleted credit score is more than that. It is not akin to "the dissemination of an incorrect zip code." *Spokeo*, 136 S. Ct. at 1550. It can impair one's ability to obtain and use credit. Therefore, Boone has adequately stated an injury in fact on the grounds that his credit score was depleted.

### (b) Particularized

Boone's alleged injury is particularized. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1; *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 333 (2006) ("[P]laintiff must allege personal injury."). The hard credit inquiry

affected Boone personally and as an individual. This is not a generalized grievance that is dispersed among the population; Boone does not seek relief "that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573-74; *see also Warth v. Seldin*, 422 U.S. 490, 507 & n.18 (1975).

Both of Boone's alleged injuries—i.e., the dissemination of personal information and the damage to his credit score—affected him in a personal and individual way. *His* personal information was allegedly disseminated; *his* credit score was allegedly damaged. He thus satisfies the particularization requirement.

### (c) Actual or Imminent Harm

Boone has adequately shown an "actual or imminent" harm for the purpose of Article III standing's injury-in-fact requirement. This element requires that the harm must be "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. For instance, a concerned citizen's hypothetical plans to "some day" visit the site of an environmental harm does not support a finding of "actual or imminent" injury to that citizen. *Id.* at 564. In this case, the alleged dissemination of information and damage to Boone's credit rating is actual, not hypothetical.

In sum, Boone sufficiently alleges an injury in fact. I will now turn to causation and redressability.

### 2. Causation

Causation is the second Article III standing requirement. A plaintiff must prove "a causal connection between the injury and the conduct complained of—i.e., the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not... th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

"Causation in the context of standing is not the same as proximate causation from tort law." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 366

(3d Cir. 2014); *see Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 (3d Cir. 1990). In fact, "an indirect causal relationship will suffice, so long as there is a fairly traceable connection." *Aichele*, 757 F.3d at 366 (citing *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009)).

Boone satisfies the causation requirement by alleging that T-Mobile's hard inquiry lowered his credit score and disseminated his personal information. These allegations do not prove Boone's claim, but standing involves a lower standard than that applied at a motion to dismiss, summary judgment, or trial. *See Toll Bros., Inc.*, 555 F.3d at 142; *Pub. Interest Research Grp. of N.J., Inc.*, 913 F.2d at 72. Whether, for instance, Boone's credit score was actually lowered because of T-Mobile's actions (as opposed to, say, the actions of some other party) is a merits question, not a standing one.

### 3.    Redressability Requirement

The third Article III standing requirement is a showing of redressability— i.e., "a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). "[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (citing *Simon*, 426 U.S. at 38, 43).

The Supreme Court addressed this requirement in *Lujan*, where concerned citizens sued to prevent the government from funding projects abroad that would threaten listed species. 504 U.S. at 562-63.[6] The plaintiffs did not prove redressability because they "produced nothing to indicate that the projects they have named will either be suspended, or do less harm to listed species," if the government funding was terminated. *Id.* at 569-71.

In this case, Boone seeks statutory damages under the FCRA, punitive damages, costs, and attorneys' fees. (2AC ¶¶ 43-45). I express no opinion as to

---

[6]    The plaintiffs specifically alleged that the government had violated a statute requiring funding agencies to consult with the Secretary of Interior. However, their intent was to stop the projects. Id. at 557 59.

what relief, if any, is appropriate. Nonetheless, damages have traditionally been awarded for privacy torts, and the harm to a credit rating is self-evidently economic in nature. If a FCRA violation is established, damages would plausibly address that violation. Boone therefore satisfies the redressability requirement.

Boone has established Article III standing. He has shown injury in fact, causation, and redressability. Boone has standing to assert his NJ FCRA claims for the same reasons. The elements of the NJ FCRA are fundamentally the same as the FCRA elements; the NJFCRA claims assert the same injury and same method of causation; and they seek the same redress.

I will now turn to the question of whether Boone states a claim on which relief can be granted.

### B. Motion to Dismiss the Second Amended Complaint

T-Mobile moves to dismiss Boone's second amended complaint for failure to state a claim under the FCRA and the NJ FCRA.

### 1. FCRA Claims

T-Mobile argues that Boone fails to state a claim under the FCRA. Specifically, T-Mobile avers that **(a)** civil false pretenses claims cannot be asserted against corporate entities; **(b)** Boone's complaint should be dismissed for failure to cite the specific subsection authorizing private rights of action under the FCRA; **(c)** T-Mobile had permissible purposes for obtaining Boone's credit report; and **(d)** there are no allegations that T-Mobile made a calculated attempt to mislead anyone in connection with obtaining credit reports. I will also address **(e)** whether Boone fails to plead damages flowing from harm to his credit report.

### (a) Suits Against Corporate Entities

An individual can pursue a false-pretenses private right of action under the FCRA, and such an action can be pursued against corporate entities like

T-Mobile. That much is apparent from a plain reading of the statute. The relevant section of 15 U.S.C. § 1681n(a) provides as follows:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of —
>
> (1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
>
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater.

I separately analyze section 1681n(a)(1)(A) and section 1681n(a)(1)(B).

Section 1681n(a)(1)(A) provides that "[a]ny person" who fails to comply with the FCRA "is liable" for "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A). "Person" is defined as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b). It follows that a corporation can be held liable under section 1681n(a)(1)(A). *See Massachusetts Mut. Life Ins. Co. v. Orenyo*, No. Civ. 96-5234, 1998 WL 1297799, at *12 (D.N.J. July 24, 1998) ("[I]f Mass Mutual willfully obtained the credit report under false pretenses or for an improper purpose, it may be civilly liable to Orenyo under the FCRA."); *Daley v. Haddonfield Lumber Inc.*, 943 F. Supp. 464, 466-68 (D.N.J. 1996) (finding that a corporation could be held liable for obtaining a credit report under false pretenses).[7] T-Mobile, a corporation, is therefore a "person" who can be held liable under the FCRA.

---

[7]     *Mass Mutual* and *Daley* both interpret an earlier version of the FCRA that did not include an equivalent to section 1681n(a)(1)(B). Regardless, as discussed in this subsection, the addition of section 1681n(a)(1)(B) merely creates a carve-out provision for "natural person[s]" who obtain credit reports under "false pretenses or knowingly without a permissible purpose." 15 U.S.C. § 1681n(a)(1)(B). It does not eliminate section 1681n(a)(1)(A)'s cause of action against corporate entities and does not limit a

Section 1681n(a)(1)(B) provides, alternatively, that if "a natural person" is liable "for obtaining a consumer report under false pretenses or knowingly without a permissible purpose," he or she is liable for "actual damages sustained by the consumer" or $1,000, whichever is greater. 15 U.S.C. § 1681n(a)(1)(B).

Essentially, section 1681n(a)(1)(A) provides a general rule for FCRA liability; section 1681n(a)(1)(B) then provides an different rule for a subset of possible defendants: "natural person[s]" who violate the FCRA "under false pretenses or knowingly without a permissible purpose." Section 1681n(a)(1)(B)'s mention of "any natural person" cannot naturally be read to limit 1681n(a)(1)(A). It would make 1681n(a)(1)(A)'s use of the term "[a]ny person," if not nonsensical, then superfluous. Reading sections 1681n(a)(1)(A) and 1681n(a)(1)(B) as providing distinct private rights of action gives effect to both terms: "[a]ny person" and "natural person." And it gives both (a) and (b) a purpose. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant...." (citation omitted)).

Read in this way, as an independent alternative, 1681n(a)(1)(B) does not eliminate "false pretenses" or "knowingly without a permissible purpose" liability for corporations. Section 1681n(a)(1)(B) is specific to the liability of "natural person[s]." It provides different rules for a private right of action when a "natural person" violates the FCRA by "false pretenses" or "knowingly without a permissible purpose." It does not limit corporate liability under section 1681n(a)(1)(A).[8]

---

plaintiff's ability to seek "false pretenses" or "impermissible purpose" actions against corporate entities.

[8]    T-Mobile cites a Southern District of Ohio case, *Burghy*, which held that a FCRA private right of action for false pretenses exists only under section 1681n(a)(1)(B). *See Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 706 (S.D. Ohio 2010). T-Mobile also cites a Western District of Oklahoma case that agrees in dicta. *See Frazier v. Vintage Stock, Inc.*, No. CIV-15-550-D, 2016 WL 6952316, at *5, n.2 (W.D. Okla. Nov. 28, 2016). I respectfully disagree with this reading of the FCRA

To summarize: section 1681n(a)(1)(B) provides specific rules for private rights of actions against a "natural person" who obtains a credit report under "false pretenses" or "knowingly without a permissible purpose." It does not eliminate section 1681n(a)(1)(A)'s private right of action for FCRA violations, which can be asserted against corporations.

## (b) Citing the Correct Subsection

Second, Boone's complaint will not be dismissed for failure to cite the specific FCRA subsection authorizing private rights of action. Count I asserts a violation of the FCRA, 15 U.S.C. § 1681 *et seq.* That count refers to a false pretenses claim under 15 U.S.C. §§ 1681b, 1681q. (2AC ¶ 41). Section 1681b establishes rules for obtaining credit reports and notifying consumers of actions on their credit report. 15 U.S.C. § 1681b. Section 1681q provides that "Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under Title 18, imprisoned for not more than 2 years, or both." 15 U.S.C. § 1681q.

The citation is inaccurate, as T -Mobile says. It is actually Section 1681n(a)(1)(B) that imposes civil liability for noncompliance with sections 1681b and 1681q. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 223 (3d Cir. 1997) ("Sections 1681n and 1681o of Title 15 respectively provide private rights of action for willful and negligent noncompliance with any duty imposed by the FCRA and allow recovery for actual damages and attorneys' fees and costs, as well as punitive damages in the case of willful noncompliance.").

The intent of Count I is clear enough, however. The title of that Count, for example, cites the statute in its entirety: "Violation of the Fair Credit Reporting Act 15 U.S.C. § 1681 *et seq.*" (2AC). And the body of Count I cites 15 U.S.C. §§ 1681b and 1681q, the source of the standard for whose violate § 1681n provides a civil remedy. This does not warrant dismissal.

for the reasons stated above. I agree with my fellow District of New Jersey judges in finding that the FCRA provides a private right of action against corporations. *See Orenyo*, 1998 WL 1297799, at *12; *Daley*, 943 F. Supp. at 466-68.

The Second Circuit seemingly agrees. In *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 45 (2d Cir. 1997), the defendant in an FCRA case sought dismissal because the plaintiff alleged a violation of § 1681q, but failed to cite section 1681n. The Second Circuit found dismissal unwarranted:

> [Plaintiff's] failure to cite the correct section of the FCRA does not require us to affirm the dismissal of her complaint so long as she has alleged facts sufficient to support a meritorious legal claim. Under the liberal pleading principles established by Rule 8 of the Federal Rules of Civil Procedure, in ruling on a 12(b)(6) motion "[t]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir.1988) (in banc) (citing *Newman v. Silver*, 713 F.2d 14, 15 n.1 (2d Cir.1983)).

*Northrop*, 134 F.3d at 45-46.

Courts do not generally dismiss complaints for failure to cite to a specific subsection of a statute. A complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the statement "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). "[W]e may not affirm the dismissal of the [plaintiffs'] complaint because they have proceeded under the wrong theory 'so long as [they have] alleged facts sufficient to support a meritorious legal claim.'" *Hack v. President & Fellows of Yale College*, 237 F.3d 81, 89 (2d Cir. 2000) (citing *Northrop*, 134 F.3d at 45-46), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *see Gutierrez v. TD Bank*, No. 11-cv-5533, 2012 WL 272807, at *11 (D.N.J. Jan. 27, 2012) ("Courts will not dismiss counts of a complaint for failure to state a claim merely because the complaint mischaracterizes legal theories or does not point to an appropriate statute or law to raise a claim for relief."); *see also see Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004); *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992); *White v. WMC Mortg. Corp.*, No. 1-1427, 2001 WL 1175121, at *1 (E.D. Pa. July 31,

23

2001) (permitting plaintiff's claim despite plaintiff citing to the wrong section of the statute in her complaint); *Mount v. LaSalle Bank Lake View*, 926 F. Supp. 759, 763 (N.D. Ill. 1996).

T-Mobile had fair notice of Boone's claim and the grounds upon which Boone's claim rests. It was not prejudiced; indeed T-Mobile itself cites the relevant subsection, section 1681n, in the course of criticizing Boone for failure to cite it. (Def. Br. 10-11). *See Mycone Dental Supply Co.*, No. 11-cv-4380, 2012 WL 3599368, at *3 & n.3 (D.N.J. Aug. 17, 2012) (finding that defendants were not prejudiced by plaintiff's failure to cite a statute's relevant subsection where they were able to respond to the claims effectively). There can be no claim of insufficient notice.

Whether the facts alleged are suffice to state a claim will be discussed herein. The motion to dismiss based on mere failure to cite a specific subsection, however, will be denied.

### (c) Permissible Purpose

The complaint adequately alleges that T-Mobile did not have a permissible purpose for obtaining Boone's credit report.

A defendant is liable for false pretenses under the FCRA if it (i) does not have a permissible purpose under section 1681b and (ii) made "a calculated attempt to mislead another in order to obtain information." *Daley v. Haddonfield Lumber, Inc.*, 943 F. Supp. 464, 467 (D.N.J. 1996). A defendant, however, does not have to *state* the permissible purpose to the defendant. As long as the defendant had some permissible purpose, it does not have liability:

> [A] misrepresentation is non-actionable if the FCRA would permit the requesting party to receive the credit report for an albeit unstated but permissible purpose. This result derives from the fact that the requesting party's legal right to the information renders immaterial any misrepresentation [she] may have committed in obtaining [the credit information,] as the consumer reporting agency was authorized to disclose the report regardless.

*Id.* at 467-68 (internal quotation marks and citations omitted); *see Galligan v. Commonwealth Mortg. Assurance Co.*, No. 93-3129, 1994 WL 263351, at *4 n.3 (E.D. Pa. June 14, 1994); *Allen v. Kirkland & Ellis*, No. 91-C-8271, 1992 WL 206285, at *2 n.3 (N.D. Ill. Aug. 17, 1992).

T-Mobile, citing section 1681b, alleges two permissible purposes for obtaining Boone's credit information.

The first alleged permissible purpose is that T-Mobile obtained the report "in connection with a business transaction that [was] initiated by the consumer" and for a "legitimate business need." 15 U.S.C. § 1681b(a)(3)(F)(i). The complaint does not establish, however, that Boone initiated a business transaction. Rather, Boone alleges that he made a "general inquiry about the availability of cell phone plans and rates," made it clear that he did not want his consumer report to be accessed if a hard credit inquiry was required, "did not initiate a transaction," and "never signed any agreement and never agreed to any services from [T-Mobile]." (2AC ¶¶ 11-12, 16-17). Those actions do not amount to a "business transaction ... initiated by the consumer." The Federal Trade Commission ("FTC") agrees. *See* FTC Advisory Opinion on the Fair Credit Reporting Act, 1998 WL 34323748, at *1 (Feb. 11, 1998) [hereinafter "FTC Letter"]. "[A] request for general information about products and prices offered does not involve a business transaction initiated by the consumer." *Id.* For instance, a consumer who asks a car dealer to "test drive" a car, or asks questions about pricing and financing, "is not necessarily indicating an intent to purchase or lease a vehicle from that particular dealer." *Id.* Conducting a hard credit inquiry is therefore inappropriate at this stage. *Id.*

Moreover, T-Mobile did not have a "legitimate business need" to obtain Boone's credit report. He asked only about prices and financing. According to the FTC:

> Only in those circumstances where it is clear both to the consumer and to the dealer that the consumer is actually initiating the purchase or lease of a specific vehicle and, in addition, the dealer

has a legitimate business need for consumer report information
may the dealer obtain a report without written permission.

*Id.* at *2. Such circumstances were not present according to Boone's
allegations. T-Mobile had no legitimate business need, under the facts alleged,
to access Boone's credit report. Therefore, T-Mobile's first alleged permissible
purpose will not warrant dismissal of the complaint.

Neither is T-Mobile's second alleged permissible purpose established by
the allegations of the complaint. T-Mobile alleges that it "intend[ed] to use the
information in connection with a credit transaction involving the customer on
whom the information is to be furnished and involving the extension of credit
to, or review or collection of an account of, the consumer." 15 U.S.C.
§ 1681b(a)(3)(A); *see also Huertas v. Citigroup, Inc.*, No. 13-cv-2050, 2014 WL
10748338, at *3 (D.N.J. Aug. 21, 2014) ("An entity that intends to use a credit
report to inform a potential extension of credit has a permissible purpose to
access a consumer's report. This is especially true when the credit transaction
was initiated by the consumer himself." (internal citation omitted)).

Section 1681b(a)(3)(A) "requires that the entity must be engaged in a
credit transaction in which the consumer is participating." *Stergiopoulos &
Invelisse Castro v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1047 (7th Cir.
2005). "An entity may rely on [section 1681b(a)(3)(A)] only if the consumer
initiates the transaction. A third party cannot troll for reports, nor can it
request a report on a whim. Rather, there must be a direct link between a
consumer's search for credit and the bank's credit report request." *Id.* T-Mobile
did not have a credit account with Boone and was not close to extending credit
to Boone. According to the complaint, Boone was essentially window shopping.

Furthermore, Boone's contact with T-Mobile did not involve the extension
of credit under the FCRA. The term "credit" is defined in the FCRA as it is
defined in the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA").
*See* 15 U.S.C. § 1681a(r)(5) ("The terms 'credit' and 'creditor' have the same
meanings as in section 1691a of this title."). Thus, "credit" means "the right

26

granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d). T-Mobile was not extending Boone the right to defer payment on a transaction or debt. Boone had not initiated a transaction or sought to create a debt; he merely asked for price quotes.

The Third Circuit has found a "permissible purpose" under section 1681b(a)(3)(A) where a consumer owes a debt or applies for credit. In *Huertas v. Citigroup, Inc.*, the Court held that "[section] 1681b(a)(3)(A) authorizes access to a consumer's credit report 'when the consumer applies for credit[.]'" 639 F. App'x 798, 801 (3d Cir. 2016).[9] In *Huertas v. Galaxy Asset Management*, the Court that a creditor had a permissible purpose under section 1681b(a)(3)(A) when a consumer sought credit, received credit, and accumulated debt. 641 F.3d 28, 34 (3d Cir. 2011). The complaint alleges that matters had not gone nearly that far. Boone did not apply for credit and did not accumulate debt with T-Mobile.

Interpreting the allegations of the complaint in the light most favorable to Boone, I must find that T-Mobile did not have a permissible purpose under section 1681b(a)(3)(A).

### (d) Calculated Attempt to Mislead

Boone has sufficiently pled that T-Mobile made "a calculated attempt to mislead another in order to obtain the [credit report]." That is a requirement for false pretenses liability. *See Daley v. Haddonfield Lumber Inc.*, 943 F. Supp. 464, 467 (D.N.J. 1996); *see also* 15 U.S.C. § 1681q.

According to the second amended complaint, Boone "made clear" that he did not want T-Mobile to conduct a hard inquiry; the T-Mobile representative assured him that T-Mobile would not conduct a hard inquiry; and T-Mobile

---

9    In *Huertas v. Citigroup, Inc.*, the consumer argued that section 1681b(a)(3)(A) applied only when the consumer initiated the transaction (and did not apply when the creditor sent the consumer solicitations). 639 F. App'x at 800-01. The Third Circuit rejected this argument. *Id.*

went ahead and obtained Boone's credit report through a hard inquiry anyway. (2AC ¶¶ 12, 15, 17). These allegations is plausibly plead a "calculated attempt to mislead."

### (e) Damages

Harm to a credit report may or may not cause actual damages. One case in this district held that a plaintiff who alleged a reduction in his credit score, without any other harms, "failed to raise the possibility of relief above the speculative level." *Slack v. Suburban Propane Partners, L.P.*, No. 10-cv-2548, 2010 WL 3810870, at *8 (D.N.J. Sept. 21, 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Other courts, however, have disagreed. The U.S. District Court for the Eastern District of Pennsylvania denied summary judgment despite defendant's argument that "damages in the form of lost credit opportunities, harm to credit reputation and credit score, and emotional distress" were not cognizable under the FCRA. *Hillis v. Trans Union*, No. 2:13-cv-2203, 2014 WL 2581094, at *3-5 (E.D. Pa. June 10, 2014). And the Third Circuit vacated summary judgment for the defendant in *Seamans v. Temple University*, where plaintiff alleged damages under the FCRA in the form of "lost credit opportunities, harm to credit reputation and credit score, and emotional distress." 744 F.3d 853, 860, 869 (3d Cir. 2014).

Accordingly, I cannot find at this, the pleading stage, that Boone has not alleged actual damages under the FCRA as a matter of law. The motion to dismiss on these grounds is denied.

### 2. NJ FCRA Claims

As to Boone's NJ FCRA claims T-Mobile makes arguments similar to those it made in opposition to the federal FCRA claims. Specifically, T-Mobile contends that **(a)** the NJ FCRA section Boone cites does not provide a right of action against a corporate entity like T-Mobile; **(b)** T-Mobile had permissible purposes for obtaining Boone's credit report; and **(c)** there are no allegations that T-Mobile attempted to mislead Boone or anyone else in connection with

obtaining a credit report. However, I find that Boone has stated a claim under the NJ FCRA. T-Mobile's motion to dismiss the NJ FCRA claims is denied.

(a) First, a private right of action exists against corporate entities under the NJ FCRA. NJ FCRA section 56:11-38 tracks the language of FCRA section 1681a(1)(A). N.J. Stat. Ann. § 56:11-38. Similar to sections 1681n(a)(1)(A) and 1681n(a)(1)(B), section 56:11-38(a)(1)(a) provides for liability against "[a]ny person" who violates the credit reporting laws; section 56:11-38(a)(1)(b) provides a specific rule for liability regarding "natural person[s]" who obtain a credit report "under false pretenses or knowingly without a permissible purpose." *Id.* For the same reasons stated in subsection III.B.1(a), Boone can assert a private right of action under the NJ FCRA against T-Mobile.

(b) Second, T-Mobile did not have permissible purposes to obtain Boone's credit report through a hard inquiry. T-Mobile claims the same permissible purposes under the NJ FCRA—that T-Mobile intended to use the information in connection with a credit transaction involving Boone; and that T-Mobile obtained Boone's credit report in connection with a business transaction initiated by Boone. (Def. Br. 14). The NJ FCRA lists the same permissible purposes I discussed previously regarding the FCRA. *See* N.J. Stat. Ann. § 56:11-31. For the reasons addressed in subsection III.B.1(c), neither of these are permissible purposes under the NJ FCRA.

(c) Third, as discussed in subsection III.B.1(d), Boone has alleged that T-Mobile attempted to mislead consumers in connection with obtaining a credit report. Boone allegedly "made clear" that he did not want T-Mobile to conduct a hard inquiry, T-Mobile's representative "agreed" that it would not conduct a hard inquiry, and T-Mobile obtained Boone's credit report through a hard inquiry nonetheless. (2AC ¶¶ 12, 15, 17). These facts suggest that the T-Mobile representative misled Boone in connection with obtaining a credit report.

Boone has stated a claim under the NJ FCRA. T-Mobile's motion to dismiss Boone's NJ FCRA claims is denied.

### C. Motion to File the Third Amended Complaint

Federal Rule of Civil Procedure 15(a) provides that a "court should freely give leave [to amend] when justice so requires." *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The grant or denial of an opportunity to amend is within the discretion of the District Court; denial of leave to amend, however, requires a stated justification. *Forman v. Davis*, 371 U.S. 178, 182 (1962). A district court may deny leave to amend a complaint where it is apparent from the record that **(1)** the amendment would prejudice the other party, **(2)** the amendment would be futile, or **(3)** the moving party has demonstrated undue delay, bad faith or dilatory motives. *Luciani v. City of Philadelphia*, 643 F. App'x 109, 111 (3d Cir. 2016) (citing *United States ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014)). However, "delay alone is an insufficient ground to deny leave to amend." *Id.* (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)).

Boone's proposed third amended complaint makes one change: it adds two proposed classes. The second amended complaint asserts a "FCRA False Pretense Class" and a "NJ FCRA False Pretense" class. (2AC ¶¶ 27-28). The third amended complaint adds a "FCRA Impermissible Purpose" class and a "NJ FCRA Impermissible Purpose" class. (3AC ¶¶ 27-30). Otherwise, the complaints allege the same facts and assert the same legal theories.

I will grant Boone permission to file the third amended complaint. **(1)** "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993). Boone's proposed amendments do not threaten to prejudice T-Mobile. These amendments would not require reopening of discovery to find additional facts. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 622 n.9 (1st Cir. 1996). T-Mobile would not need additional time to change its litigation strategy. *See id.* T-Mobile has already raised permissible-purpose arguments in its motion to dismiss. (Def. Br. 2, 11-14). These are refinements, not surprise legal

arguments that would fundamentally affect defendant's strategy or response. *See Luciani*, 643 F. App'x at 111-12. Rather, Boone's amendments align the class allegations with legal arguments that have already been raised.

**(2)** Second, the amendment would not be futile. Boone aligns the putative classes with the legal theories under which he seeks relief. The third amended complaint will not delay a determination of the motion to dismiss. Boone has standing, has a private right of action, and states a claim upon which relief can be granted. T-Mobile's futility arguments are unavailing.

**(3)** Third, while Boone's repeated amendments have caused some delays, it does not appear that the third amended complaint will cause any further serious postponements. The third amended complaint, because it leaves the factual allegations and causes of actions intact, is not likely to restart the motion to dismiss process, engender further delays, or waste more judicial resources. In fact, T-Mobile concedes that "[Boone's] putative class definitions have no relevance to [the motion to dismiss] inquiry." (Def. Reply 12). "If and only if [Boone] states a plausible claim [for] relief, then the court and the parties can turn their attention to the issue of class certification." (Def. Reply 12). I agree.[10] The structure of the putative classes will need to be addressed as this case moves forward. Regardless, as stated before, "delay alone is an insufficient ground to deny leave to amend." *Luciani*, 643 F. App'x at 111 (citing *Cureton*, 252 F.3d at 273).

---

[10]     T-Mobile expresses an understandable concern that its motion to dismiss the second amended complaint could be terminated, leaving it in the position of refiling its motion with respect to the third amended complaint. That concern is obviated by sections III.A–B. I have addressed the merits of T-Mobile's motion.

31

## IV.  CONCLUSION

For the foregoing reasons, I find that Boone has established Article III standing and has adequately stated claims under the FCRA and the NJ FCRA. The motion to dismiss is therefore denied. I will grant Boone leave to file the third amended complaint.

Dated: January 26, 2018

**KEVIN MCNULTY**
**United States District Judge**